BRINK *v.* SHEPARD.

1. NUISANCES—TUBERCULOSIS SANATORIUM—INJUNCTION.

While a tuberculosis sanatorium is not a nuisance *per se*, yet, when maintained in a strictly residential section of a city, the fact that nearby residents, by reason of the widespread fear of this communicable disease, are deprived of the comfort, well being and enjoyment of their homes, coupled with the fact of their financial loss by reason thereof, *held*, to justify appeal to a court of equity for relief.

2. SAME—LACHES—EVIDENCE.

The finding of the court below that plaintiffs moved within a reasonable time after they discovered defendant's intention to maintain said sanatorium, and that they therefore were not guilty of laches, although it had been in operation over a year before this suit was commenced, *held*, justified by the record.

3. SAME—ESTOPPEL—LACHES.

Where defendant, at the very inception of his project, informed plaintiffs' attorney, when threatened with injunction proceedings, that he would not conduct a tuberculosis hospital, and also so informed several of the individual

---

On right of property owner to complain of location of contagious hospital in neighborhood, see notes in 5 L. R. A. (N. S.) 1028; 18 L. R. A. (N. S.) 260; 25 L. R. A. (N. S.) 228.

Pesthouse or contagious disease hospital as nuisance, see note in 4 A. L. R. 995.

plaintiffs, who, by reason of such assurance, made no move to restrain said sanatorium for over a year, when they had positive proof of the character of defendant's institution, defendant was in no position to invoke the doctrine of equitable estoppel, although in the meantime he had expended considerable sums of money in fitting up his building for sanatorium purposes.

Appeal from Kalamazoo; Barton (Joseph), J., presiding.    Submitted April 28, 1921.    (Docket No. 27.) Decided October 3, 1921.

Bill by Jay Brink and others against Benjamin A. Shepard to enjoin the maintenance of a hospital in a residential district.    From a decree for plaintiffs, defendant appeals.    Affirmed.

*Marvin J. Schaberg,* for plaintiffs.

*Weston & Fox* (*Harry C. Howard,* of counsel), for defendant.

FELLOWS, J.    Defendant, a physician, is conducting a tuberculosis sanatorium in what is called the "Inkster homestead" in the city of Kalamazoo.    The property is part of an addition known as "Inkster Park addition."    Plaintiffs, 13 in number, are residents of the vicinity and were such prior to the establishment of the sanatorium, the home of one being within 70 feet of the sanatorium, of two others less than 150 feet, and of the others being of varying distances.    The oral testimony and the photographs introduced in evidence establish beyond doubt that the locality is a strictly residential district although doubtless not as thickly settled as some of the other parts of Kalamazoo.    The relief sought and granted by the trial court was injunctive, restraining defendant from conducting a sanatorium for the treatment of tuberculosis in this residential district.

Unless those plaintiffs have lost their rights by laches, we are persuaded that they are entitled to the relief prayed under the former holdings of this court: *Barth* v. *Hospital Ass'n,* 196 Mich. 642; *Saier* v. *Joy,* 198 Mich. 295 (L. R. A. 1918A, 825); *Birchard* v. *Lansing Board of Health,* 204 Mich. 284. In the *Barth Case* an injunction was decreed restraining the erection and maintenance of a psychopathic hospital in a strictly residential district. In the *Saier Case* a like decree was entered against the maintenance of an undertaking establishment, and in the *Birchard Case* a similar decree was entered against the maintenance of a detention hospital for infectious diseases. In the first of these cases the trial judge dismissed the bill without taking the testimony, but in the others the testimony was quite persuasive, as it is in the instant case, that the institution if properly conducted would cause no actual danger to nearby residents, that there was little or no danger of communicating disease such a distance as intervened between the plaintiffs' residences and the defendant's institution, but as in those cases the fear of the disease being communicated is present. In each of these cases we recognized the claim that the institutions were not nuisances *per se,* but in each of these cases we held that they might become nuisances as to private individuals by their location in strictly residential districts, and in the *Birchard Case,* referring to the earlier cases, we said:

"We held in these cases that while the institutions involved were not nuisances *per se,* they became such by reason of their location in a residential district. We recognized that there might be no actual danger if properly conducted, but that their maintenance in close proximity to the home would create such dread and fear in the mind of the normal person as—

"'would destroy the comfort, the well-being and the property rights of the plaintiffs,'

—depressing the mind and lowering the vitality of the normal person, rendering one more susceptible to disease, and reducing the value of the property so situated; and in each of the cases this court decreed injunctive relief."

There is testimony in the record that property in this locality has increased in value and one of defendant's witnesses who is interested in the sale of lots in this addition expresses the view that the establishment of the sanatorium has materially increased the value of surrounding property, but the undisputed testimony establishes that housing conditions in the city were abnormal at the time the case was heard and that improved real estate commanded exceedingly high prices. The weight of the testimony clearly establishes that property values in this locality are at least 25 per cent. lower with the sanatorium there than they would be without it. The maintenance of the sanatorium would cause the plaintiffs a distinct, definite, financial loss.

The record discloses that in this State tuberculosis stands at the head of diseases in the toll it annually collects. The record likewise discloses the herculean efforts of the medical profession and the anti-tuberculosis societies to alleviate this condition. Circulars have been sent out, advice has been given, preventive measures have been advocated and adopted, and much has been accomplished. The public has been advised of its ravages and has a well-grounded fear of its effect. It is a communicable disease as matter of fact and is so declared to be by section 5099, 1 Comp. Laws 1915. The maintenance of a hospital for the treatment of this communicable disease in a strictly residential district cannot fail to deprive residents of nearby homes of the comfort, well-being and enjoyment of their homes to which they are entitled, and this coupled with their financial loss justifies an appeal

to a court of equity for relief.   Upon principle the instant case is controlled by our former decisions above cited, and we need not consider the sustaining authorities from other States, some of which are cited in the opinion in the *Birchard Case.*

In. the brief of defendant's counsel and upon the oral argument much stress was laid upon the fact that this proceeding was not launched until something like a year after the defendant had commenced the operation of the hospital and the doctrine of laches is invoked to defeat the relief.   Defendant claims to have invested considerable money in remodeling, repairing and fitting the house for use for a tuberculosis hospital and claims to have obligated himself for the payment of a very considerable additional sum, and he insists that all this was done with the full knowledge of the plaintiffs and their attorney that the premises were to be used for a tuberculosis hospital and that it is therefore unconscionable and inequitable to now prevent such use of the property by injunction.   This claim is met by the plaintiffs with testimony tending to show that not only were they without knowledge that the premises were to be used and were being used for a tuberculosis hospital but that defendant specifically assured some of them and their attorney that he would not use the premises as a tuberculosis hospital, and that it was but a few days before this bill was filed that they had any definite proof that it was so used.   Upon this disputed question of fact the trial judge made the following finding:

"The court finds as a fact, that the Doctor when he made the investment, bought this property, had notice of the fact that it was in a residential district; that he made the investment with his eyes open to the fact, and that the institution he was about to establish was established as a tubercular hospital for the treatment of tubercular patients would be a detriment to the community.   He gave the residents to understand that

it was not what might technically be called a tubercular institution; and that impression remained until he made the formal statement February 24, 1920, at which time it became apparent that he could no longer dodge the issue that such was the purpose of the institution."

A reading of the somewhat conflicting testimony in this record is convincing that the trial judge who heard and saw the witnesses correctly disposed of this question of fact. We are satisfied that at the very inception of defendant's project he was informed by plaintiffs' attorney that if he intended to maintain a tuberculosis hospital plaintiffs would apply for an injunction and that he assured the attorney he would not conduct a tuberculosis hospital; one plaintiff h₍ assured he would treat only cases of slight chest ailments; to another he said he should not conduct a tuberculosis sanatorium; and in a carefully worded announcement in the press he gave the public and plaintiffs to understand that the institution would not be a tuberculosis hospital as such an institution is generally understood to be. On February 24, 1920, he made application to the city commission for a sewer on the street and therein stated that he was conducting a tuberculosis sanatorium. This was the first definite, positive proof plaintiffs had of the character of the institution. Shortly thereafter this bill was filed. Under these circumstances defendant cannot invoke the doctrine of an equitable estoppel.

The decree will be affirmed, with costs of this court to plaintiffs.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.