BORSVOLD *v.* UNITED DAIRIES.

1. INJUNCTION—SCOPE OF RELIEF—SUBJECT OF CONTROVERSY.
   Consideration of suit for injunction as to commercial use is confined to 1 of 3 restricted lots, where evidence shows that use of remaining 2 lots was no longer a matter of controversy.

2. APPEAL AND ERROR—DE NOVO REVIEW—CHANCERY CASES.
   The Supreme Court reviews the record *de novo* on appeal in suit to enjoin the commercial use of lots restricted by covenant and zoning ordinance to residential purposes and gives great weight to the findings of fact made by the trial judge, since the matter reviewed is a chancery case.

3. COVENANTS—RESTRICTION AGAINST BUSINESS USE—PARKING OF MILK TRUCKS.
   The continual parking of wholesale milk delivery trucks as a direct adjunct of dairy garage on adjoining lots constitutes the conducting of business within the meaning of a covenant restricting the conduct of business upon the premises.

4. SAME—SILENCE AS TO VIOLATION OF RESTRICTION—ESTOPPEL.
   Nearby property owners are estopped from seeking injunctive relief as to a business use being made of lots restricted against such use, where by silence and inaction they have acquiesced in the violation.

5. APPEAL AND ERROR—NUISANCE—FINDINGS OF FACT BY TRIAL JUDGE.
   The Supreme Court accords weight to the findings of fact by a trial court in suit to enjoin the violation of a use restriction which was also claimed to constitute a nuisance.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 5] 3 Am Jur, Appeal and Error § 895 *et seq.*
[3] 14 Am Jur, Covenants, Conditions and Restrictions § 218.
[4] 14 Am Jur, Covenants, Conditions and Restrictions § 295.
[6] 39 Am Jur, Nuisances § 153 *et seq.*
[7, 8] 39 Am Jur, Nuisances § 47.
[10] 14 Am Jur, Costs §§ 97, 98.

6. NUISANCE—NOISE IN THE NIGHTTIME—INJUNCTION.

 Noise in the nighttime in a residential neighborhood may constitute an enjoinable nuisance.

7. SAME—NOISE.

 Noise is not generally a nuisance per se but it may be of such character as to constitute a nuisance in fact even though it arises from the operation of a lawful business or occupation.

8. SAME—NOISE AS PHYSICAL DISCOMFORT—QUESTION OF FACT.

 To render noise a nuisance, it must be of such a character as to be of actual physical discomfort to persons of ordinary sensibilities, it must be unreasonable in degree and the reasonableness thereof is a question of fact dependent upon the locality, character and volume of the noise, the time and duration of its occurrence, the number of people affected by it and all the facts and circumstances of the case.

9. INJUNCTION—NUISANCE—EQUITY—MILK TRUCKS IN RESIDENTIAL NEIGHBORHOOD.

 Injunctive relief against claimed nuisance, whereby use of lot in residential neighborhood for the parking of wholesale milk delivery trucks is restricted so as to require that trucks be parked not later than 7 p.m. and not moved before 6:30 a.m., *held,* equitable under all the circumstances of the case.

10. COSTS—INJUNCTION—NEITHER SIDE PREVAILING ENTIRELY.

 No costs are allowed on appeal in suit to enjoin use of lot in residential neighborhood for parking of wholesale milk delivery trucks where both sides have appealed and decree is affirmed, since neither party has prevailed entirely.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 4, 1956. (Docket No. 44, Calendar No. 46,964.) Decided February 28, 1957.

Bill by Oscar Borsvold and other property owners against United Dairies, a Michigan corporation, and Joseph Freilich to enjoin use of lots for parking trucks used in milk deliveries. Decree for plaintiffs granting partial relief by enjoining movement of vehicles during nighttime. Defendant United Dairies appeals. Plaintiffs cross-appeal. Affirmed.

*Hayes & Hayes* (*Allan M. Hayes,* of counsel), for plaintiffs.

*Piggins, Rehn, Balmer & Skillman* (*Frederic F. Piggins* and *Carroll C. Grigsby,* of counsel), for defendants.

EDWARDS, J. This chancery dispute arose between vigorous partisans of 2 separate essentials of human existence—food and sleep. On one side the unhappy chancellor was faced with the economic need of a bustling dairy to start its milk trucks in the earliest hours of the morning. On the other side he was confronted by a plea for some relatively uninterrupted rest from the home owners in the immediate neighborhood.

The trial judge may well have had an ancient mariner's views in mind:

"Oh sleep! it is a gentle thing,
Beloved from pole to pole!"*

for he ruled those activities of the dairy which interrupted the rest of the neighborhood to be a nuisance. And by injunction he restored quiet between the hours of 7 p. m. and 6:30 a. m.

Our question is whether or not the record justifies his action.

It will not assist our decision but it perhaps should be noted that the instant dispute arises basically from failure of the city of Detroit and the private subdividers thereof to initiate any planning or zoning prior to 1941 which was calculated to separate commercial and residential uses. The zoning ordinance, when adopted in this situation, patently described what already existed more than it planned what should be.

---

* "The Rime of the Ancient Mariner." Samuel Taylor Coleridge.

The plaintiffs each own homes on North avenue, a residentially-zoned and restricted street which runs from Log Cabin across the boundary between the city of Detroit and the city of Highland Park. Defendant United Dairies owns and operates, in conjunction with its dairy activities, a sizeable garage on commercial property fronting on Log Cabin at the intersection of North avenue. Defendant Freilich is the owner of 3 lots across a public alley immediately to the rear of the United Dairies' garage. These vacant lots front on North avenue. In recent years they have been leased to defendant United Dairies for the parking of its delivery trucks. They represent the legal battleground.

The 3 lots involved are numbers 208, 209, and 210 of the Hamilton Park Subdivision in Detroit and Highland Park, Michigan, on the south side of North avenue immediately adjoining the western boundary of the subdivision.

The plaintiffs all own homes in the Hamilton Park Subdivision on North avenue near defendants' lots. Of the plaintiffs, Mr. Amazi bought his home in 1950, Mr. Van Kuiken in 1941 or 1942, Mr. Dowell moved in in 1946, and the Borsvolds, who own lot 207 immediately adjoining the lots in question on the east, purchased in September, 1941, after having rented for 3 months.

All the lots in the subdivision are subject to the following restriction:

"No manufacturing, liquor, or other business shall be conducted upon said premises, nor shall any dwelling costing less than $1,500 be erected thereon."

The lots in dispute were also zoned for residential use. But in October, 1952, in a curtain-raiser to the current dispute, the Detroit board of zoning appeals determined that previous to the effective date of the zoning ordinance in 1940, United Dairies had a

"vested right of nonconforming use" to lot 210 for parking of trucks and cars in connection with dairy operations; but did not have such a right as to lots 208 and 209. Accordingly, the board permitted United Dairies to continue using lot 210 subject to the conditions that a barrier 5 feet from the front property line be erected and the 5-foot strip be landscaped and maintained, and that another barrier be erected on the line between lots 210 and 209 to prevent vehicles from entering lots 209 and 208. This ruling has been complied with, and this record discloses no complaints subsequent to 1952 applicable to lots 208 and 209.

Presently lot 210 is used for overnight parking of about 10 trucks, 8 of which are of the ton or ton-and-a-half variety used for wholesale deliveries. The instant litigation concerns the fact that these wholesale trucks begin to pull out by about 3 a. m. and continue intermittently until about 7 a. m. This operation, plaintiffs' testimony indicated, is attended by various human and mechanical noises and odors all to the great discomfort of a neighborhood at slumber. Defendant offered testimony tending to establish that competition and police and union regulations require that defendant United Dairies commence activities during these hours, it being desirable that customers be served and the trucks off the street before the rush of daytime develops. Defendants' testimony also disputed the amount and kinds of noise claimed by plaintiffs. These trucks are all back on the lot by 6 p. m.

United Dairies estimates that it has put a little over $2,000 into the lots for upkeep purposes since 1938, about half of this amount being the estimated value of the labor of their own regular employees in leveling, et cetera.

There is a great deal of conflicting testimony as to how long United Dairies has actually been using

the lots in question for parking purposes (since 1952, of course, only lot 210). All plaintiffs' witnesses say since about 1947, and all defendants' witnesses say since United Dairies moved in in 1938. Taking the testimony as a whole, however, it appears that United Dairies actually began in 1938 parking trucks of the smaller home delivery type in addition to private cars of employees mingled with those of the neighbors. Then, in about 1947 United Dairies began to make exclusive use of the property in dispute and began to park thereon overnight the larger type wholesale truck.

The trial judge summarized the testimony bearing upon the nuisance issue as follows:

"The plaintiffs now claim that the defendants are making it almost impossible for them to have their rest at night with the conduct of the machines belonging to the defense that are stored in the lot; the moving of them out at early hours of the morning, racing of the motors, the fumes thereof, the odors that come from sour milk and cream, and other conditions which plaintiffs claim are violative of their rights.

"Defendants deny the claims of the plaintiffs, but insist that in conformity with the directions of the zoning board, they have gone to considerable expense of time, energy and money not only to have lots 208 and 209 presentable and to be used by the public for playground purposes, but that the equipment belonging to them is stored in a proper manner and is properly supervised; that there is no untoward conduct on the part of the drivers of such equipment; that there is no noise by the racing of motors or the loud talking of the drivers or any type of conduct which could be claimed to be improper or might offend the senses of the several plaintiffs."

He then entered the following finding of fact:

"I think the entire litigation, all matters pertaining thereto, can be simmered down to the one per-

taining to the moving of equipment on and off lot 210. I think the plaintiffs have made out their case with respect to the early morning hours of moving that equipment, which is destructive of the peace and rest of the neighborhood close at hand, and the neighbors who have testified in that action that the rest, which is so necessarily essential to humankind is destroyed by the equipment moving out."

The opinion concluded:

"It is the decree of this court that lot 210 may continue to be used for parking privileges of the commercial vehicles. There will be no private vehicles parked on lot 210, but the lot shall have all of its vehicles stored not later than 7 p. m., and there shall be no moving of vehicles, starting of the motors or racing of them or any other conduct with respect to equipment placed on lot 210 until removal about 6:30 the following morning.

"The decree may be prepared without cost to either side."

The trial judge made no determination as to the effect of the restriction upon the use of lot 210, and indicated in his opinion that lots 208 and 209 were no longer a subject of controversy which required action of the court sitting in equity. With this latter opinion this Court agrees. There being no proof in this record that plaintiffs are suffering any damage in relation to lots 208 and 209, our subsequent consideration will be confined exclusively to lot 210.

This being a chancery matter, this Court reviews the record *de novo*, but gives great weight to the findings of fact of the trial judge. *O'Connor* v. *Jersey Creamery Co.*, 265 Mich 219; *Hartka* v. *Hartka*, 346 Mich 453; *Schuur* v. *Berry*, 285 Mich 654.

The trial judge did not pass upon the effect of the restrictions applicable to this property. We believe the record supports the conclusion that the restric-

tion, as quoted above, is applicable to the subject property. The language of the restriction is quite different from that ordinarily used today.

"No manufacturing, liquor or other business shall be conducted upon said premises."

Careful thought about this language, as it would be applied to the present circumstance, leads us to conclude that the continual parking of defendant's milk trucks upon the lot in question, as a direct adjunct of its dairy garage operation, plus the daily operation of those vehicles from the lot, would represent conducting business within the meaning of the instant restriction. *Bennett* v. *Consolidated Realty Company,* 226 Ky 747 (11 SW2d 910, 61 ALR 453).

Defendants, however, claim that plaintiffs should be regarded as estopped to enforce this restriction as to this lot. They contend, and the record in this cause supports their contention without substantial dispute, that as to lot 210 parking of dairy company trucks started as far back as 1938 and has continued without interruption down to date. This contention is further buttressed by the finding of the Detroit board of zoning appeals that prior to 1940 (the effective date of the Detroit zoning ordinance) defendants had an established nonconforming use for the parking of vehicles on lot 210. It appears clear from numerous cases decided by this Court that where property owners have by silence and inaction acquiesced to violation of use restrictions in a particular situation, as to that violation they are estopped from seeking injunctive relief. *Cherry* v. *Board of Home Missions of Reformed Church in United States,* 254 Mich 496; *Margolis* v. *Wilson Oil Corporation,* 342 Mich 600.

It clearly appears from this record that as long as defendant's parking was restricted to lot 210 little,

if any, effort was made by the neighbors to interfere with such use in past years, and that it was the expansion of defendant's fleet of trucks, and the consequent expansion of its parking use onto the adjacent lots 208 and 209, which occasioned the board of zoning appeals case and the instant litigation. We, therefore, hold that as to lot 210 plaintiffs are estopped from asserting the building restriction as a bar to defendant's use of said lot.

With these conclusions established, this case becomes a simple prayer for injunctive relief against a claimed nuisance involving only lot 210. In this record this Court feels that weight should be given to the findings of fact previously quoted from the experienced trial judge who heard this case, and that a review of the record indicates ample evidence to support his findings.

It is, of course, beyond dispute noise in the nighttime in a residential neighborhood may constitute an enjoinable nuisance. *O'Connor* v. *Jersey Creamery Co.*, 263 Mich 86; *Kobielski* v. *Belle Isle East Side Creamery Co.*, 222 Mich 656 (31 ALR 183); *Shimberg* v. *Risdon Creamery Co.*, 215 Mich 94; *Gilbough* v. *West Side Amusement Co.*, 64 NJ Eq 27 (53 A 289); *Friedman* v. *Keil*, 113 NJ Eq 37 (166 A 194, 86 ALR 995).

Defendant, however, contends that its situation is distinguished from the above-cited cases in that its creamery is located at an entirely different location and that this garage and parking operation represents disturbance of a lesser degree.

American Jurisprudence offers the following general rules against which we test the trial judge's action:

"Generally, noise is not a nuisance per se, but it may be of such a character as to constitute a nuisance in fact, even though it arises from the operation of

a factory, industrial plant, or other lawful business or occupation.

"To render noise a nuisance, it must be of such a character as to be of actual physical discomfort to persons of ordinary sensibilities. * * * There can be no fixed standard as to what noise constitutes a nuisance, and the circumstances of the case must necessarily influence the decision. To amount to a nuisance, the noise must be unreasonable in degree, and reasonableness in this respect is a question of fact. No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells. The location and surroundings must be considered, since noise which amounts to a nuisance in one locality may be entirely proper in another. The character and magnitude of the industry or business complained of and the manner in which it is conducted must also be taken into consideration, and so must the character and volume of the noise, the time and duration of its occurrence, the number of people affected by it, and all the facts and circumstances of the case." 39 Am Jur, Nuisances, § 47, pp 330–333.

We believe that the present record indicates an increased milk truck fleet and increased use of lot 210 for parking with consequent increase of noise and disturbance of the neighborhood after 1947. Nighttime noises which the neighborhood had endured without complaint increased to the point of nuisance. *Rohan* v. *Detroit Racing Association*, 314 Mich 326, 359, 360 (166 ALR 1246).

We conclude that the trial judge gave a careful hearing to the essential fact question of whether or not the instant operation constituted a nuisance under all the circumstances, and that his affirmative finding in this record should be accepted by this Court. We note his reference to alternative plans available to defendant dairy company which bears

upon the question as to whether or not the noises under all the cirumstances are unreasonable. We believe that the restriction against parking or removing vehicles from the lot in question during the hours ordinarily devoted to sleep in a residential neighborhood represents as reasonable and as fair an application of equity to the current dispute between these parties as could be arrived at.

The cross appeal of plaintiffs, appellees and cross appellants, based upon the enforcement of the restrictions previously referred to, is denied for the reasons cited.

The decree entered by the chancellor in the court below is affirmed. No costs are awarded, neither party having prevailed entirely.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.