OAK HAVEN TRAILER COURT, INC., *v.* WESTERN
WAYNE COUNTY CONSERVATION ASSOCIATION.

STANBURY *v.* SAME.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—NUI-SANCE.

Suit for abatement of a nuisance formerly being a chancery matter, an appellate court reviews the record *de novo,* though great weight is given to the determination made by the original trier of fact.

2. NUISANCE—ELEMENTS—SURROUNDING CIRCUMSTANCES.

What constitutes a nuisance is a question that cannot be considered in a vacuum, and the activity complained of must be viewed with regard to surrounding circumstances.

3. SAME—GUN CLUB—SURROUNDING CIRCUMSTANCES.

Lay of the land, character of the area, zoning ordinances, and all the surrounding circumstances are of extreme importance in determining whether a gun club and its activities do in fact constitute a nuisance.

4. SAME—ZONING ORDINANCE—MUNICIPAL WILL.

A zoning ordinance is not allowed to sanction a private nuisance, but is treated as an expression of the will of the municipality, and must be considered as a factor in favor of the use made of the land.

5. SAME—PER ACCIDENS—SURROUNDING CIRCUMSTANCES—GUN CLUB.

Gun club and its activities *held,* not to constitute a nuisance *per accidens,* where the community is not highly developed, deer

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 703, 882.
[2, 3, 11] 39 Am Jur, Nuisances § 25.
[4] 39 Am Jur, Nuisances § 46.
[5, 9] 39 Am Jur, Nuisances § 11.
[6–8] 39 Am Jur, Nuisances § 47 *et seq.*
[10] 39 Am Jur, Nuisances § 153 *et seq.*

hunting is permitted in season, the neighborhood contains a
large prison facility, and the zoning of the area is agricultural
and not residential.

6. SAME—NOISE—ABATEMENT.

No one is entitled, in every location and circumstance, to absolute
quiet in the use and enjoyment of his property; but when
noises are unreasonable in degree, considering the neighbor-
hood and all attending circumstances, an abatable actionable
nuisance may be said to exist as a matter of fact.

7. SAME—NOISE—PROVINCE OF TRIER OF FACT.

Question presented as to whether an actionable nuisance exists,
when noise is subject of complaint, is one of fact rather than
law.

8. SAME—NOISE—GUN CLUB.

The noise level emanating from the defendants' gun club, as re-
stricted by the trial court's conditional order, *held*, not to con-
stitute a nuisance, where record indicates the trial judge took
great pains to get the total picture, viewed the premises, and
attended 2 demonstrations of the firing ranges, as great weight
is given to his findings of fact as to the noise level in relation
to what goes on around the property especially with respect
to sound measurements at plaintiffs' property.

9. SAME—DANGER—GUNFIRE—GUN CLUB—QUANTUM OF HARM.

Utility of defendants' conduct of its gun club is weighed against
the *quantum* of harm to the plaintiffs in determining whether
gunfire on the club's premises constitutes a nuisance to plain-
tiffs.

10. INJUNCTION—POSSIBILITY OF HARM.

Injunction against defendants' use of its property requires more
of a showing than the mere possibility or even probability of
harm to plaintiff resulting from that use.

11. NUISANCE—DANGER—WEIGHT OF EVIDENCE—GUN CLUB—SUR-
ROUNDING CIRCUMSTANCES.

Alleged danger to the surrounding community from the defend-
ants' rifle and pistol ranges *held*, not to constitute a nuisance,
where the surrounding area is agricultural in the main, not
residential, the area is one in which hunting is allowed, the
ranges of club have been built with most stringent safety pre-
cautions, and the record is convincing that the harm or danger
suffered by plaintiffs from the conduct of the defendants is a
fear of the mind and not an actual danger to the plaintiffs.

Appeal from Wayne; Montante (James), J. Submitted Division 1 January 4, 1966, at Détroit. (Docket Nos. 267, 268.)    Decided April 26, 1966. Leave to appeal granted by Supreme Court August 30, 1966. See 378 Mich 730.

Complaints by Oak Haven Trailer Court, Inc., and others and by Clarence B. Stanbury and others against Western Wayne County Conservation Association, a Michigan corporation, and Wayne Conservation Land Company, a Michigan corporation, to enjoin a nuisance. Cases heard together. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Dale D. Libby,* for plaintiffs.

*Alfred L. Meredith* (*Roland Olzark,* of counsel), for defendants.

LESINSKI, C. J.    This case comes on appeal from a conditional judgment in the circuit court for the county of Wayne in favor of the defendants, and a dismissal of the plaintiffs' case with prejudice. For brevity, defendants will hereafter be referred to as gun club.

The gun club was formed in 1938 and in 1942 established headquarters on 40 acres in Nankin township. It acquired a building in 1945 and a liquor license in 1957. In 1961 the gun club began looking for a new site for its activities as the former site was about to be condemned by the Wayne county road commission for establishment of a park. The property settled upon was a 62-acre tract, 40 acres in Plymouth township, Wayne county, and 22 acres in Salem township, Washtenaw county, described to wit:

The NW 1/4 of SW 1/4 of section 19, Plymouth township, Wayne county, Michigan (40 acres) and part of the NE 1/4 of the SE 1/4 of section 24,

Salem township, Washtenaw county, Michigan (22 acres).

The character of this area is fully described in *Smith* v. *Plymouth Township Building Inspector* (1956), 346 Mich 57, wherein the Court citing the record at p 61 stated:

"The evidence establishes conclusively that the area of the proposed site (referring to Oak Haven Trailer Court) is largely agricultural and open country, and there is no residential or industrial development in the district itself and surrounding districts."

The evidence in this case reveals that the character of the area has not changed appreciably in the past 10 years, except for the addition of one of the plaintiffs herein, the Oak Haven Trailer Court, Inc. (which was a party in the prior *Smith Case, supra*), and the addition of the gun club.

After a public hearing late in 1961, the gun club received a building permit from Salem township board of zoning appeals for the 22 acres. Property owners contested the issuance of the permit, and defendants here were allowed to intervene in that suit. See *Rockwood* v. *Township of Salem* (1964), 373 Mich 332. To avoid further dispute, the gun club constructed its clubhouse on the portion of its property in Plymouth township. The property in Plymouth township is zoned agricultural and use as a gun club is contemplated within this zoning designation.

The gun club set up 3 firing ranges, a 50-yard pistol range, a 100-yard rifle range, and a 200-yard rifle range, all of which were built according to National Rifle Association specifications. The latter two ranges include side walls of 8' to 10' and a backstop on the 200-yard range that was 35' in height and over 100' in depth. A "U" bar has also been

built. It is designed to prevent shooting over the backstop. These ranges were set up in an easterly direction with the firing line on the Wayne-Washtenaw county line.

In the spring of 1962, the gun club was in operation and a "big bore shoot" was held on May 19 and 20, 1962. In this competition .30 caliber rifles were used on the 200-yard range. On the Monday following, one of the plaintiffs, Clyde Smith, requested that the gun club change the direction of the firing ranges. He was told that this would be an impossible task financially.

On June 1, 1962, this suit was begun by the Oak Haven Trailer Court, Inc., *et al.* (hereinafter referred to as Oak Haven) in which they sought a permanent injunction against the defendants' use of its property for discharging of firearms or serving of food and beverages. The trial court, on June 1, 1962, granted a temporary restraining order, enjoining the defendants from using their property "or any part thereof, for the service of food and beverages to themselves or others or for the discharge of firearms, either individually or in rifle meets, or in similar contests." This restraining order was modified on stipulation of the parties to allow the serving of food and drink and was so ordered in Wayne circuit court on June 28, 1962. A later modification allowed the use of the gun ranges except no meets were allowed.

On September 11, 1962, a second suit was filed against the gun club by Clarence Stanbury, *et al.,* at which time another judge of the circuit court for the county of Wayne issued a temporary restraining order. Upon being informed of the prior litigation begun by Oak Haven, the restraining order of September 11, 1962 was set aside, *sua sponte* on September 14, 1962. On October 9, 1962 the two cases

were consolidated on order of the circuit court and assigned for trial.

The trial of this case was extensive, involving 27 days of actual trial, extending from June 25 to December 7, 1962. There were about 2,000 pages of testimony taken from 60 witnesses with 47 exhibits being introduced. In addition, the court viewed the premises in question and was present at simulated meets on August 5, 1962, and October 13, 1963. The second simulated meet was held at the trial court's request to supplement the testimony with sound measurements taken on plaintiffs' properties of the noise from the ranges.

The trial court filed its written opinion January 9, 1964. Pursuant to it a conditional judgment in favor of the defendants was entered February 3, 1964. It allowed the defendant gun club to continue operations on its 62-acre tract if it complied with the following requirements:

1. That the backstop be raised 5′ to a height of 40′ on the 200-yard range.

2. The noise level of the gun firing shall not exceed 88 1/4 decibels at distance of 1/4 mile.

3. Hours of shooting shall be limited daily between 9 a.m. and 6 p.m., on Sundays from 10 a.m. to one hour after sunset.

4. No 300-yard range shall be used without prior approval of the trial court, after adversary proceedings.

The court retained superintending control of the questions raised in this case. This is the judgment appealed from.

This formerly being a chancery matter, an appellate court reviews the record *de novo*, though great weight is given to the determinations made by the original trier of fact. See *Borsvold* v. *United Dairies* (1957), 347 Mich 672 (82 ALR2d 406); *O'Connor* v. *Jersey Creamery Co.* (1933), 265 Mich

219; *Hartka* v. *Hartka* (1956), 346 Mich 453; *Schuur* v. *Berry* (1938), 285 Mich 654.

The questions raised on appeal are whether the gun club itself or the noise from the defendants' ranges and clubhouse, as well as the danger of the range, constitutes a nuisance.

The question of what constitutes a nuisance is one that cannot be considered in a vacuum. The activity must be viewed with regard to surrounding circumstances. As the Michigan Supreme Court said in *Obrecht* v. *National Gypsum Co.* (1960), 361 Mich 399, 417:

"Nothing in the law of nuisance is better settled than this rule: that the locality and surroundings of the challenged operation or thing become an important factor in arriving at proper judicial decision of existence or nonexistence of an actionable nuisance. That which would be actionable or abatable in one place or locality might not be such in another. The oft-quoted observation of the Supreme Court (*Village of Euclid* v. *Ambler Realty Co.*, 272 US 365, 388 [47 S Ct 114, 71 L ed 303, 54 ALR 1016]) comes to mind here: 'nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard.' "

Thus the lay of the land, the character of the area, the zoning ordinances, and all the surrounding circumstances are of extreme importance in determining whether the gun club and its activities do in fact constitute a nuisance. The evidence in this case as well as the opinion in *Smith* v. *Plymouth Township Building Inspector, supra,* reveals that the community surrounding the gun club is not highly developed. It is an area in which deer hunting is carried on in season. Adjacent to the gun club is the Detroit House of Correction. The property purchased by the gun club was swampy in nature and not suitable for development. The zoning of

the area can also help in determining for what purposes particular property is suited. As stated in 54 Mich L Rev 266, 271 (1955):

"While most courts will not allow a zoning ordinance to sanction a private nuisance, as a bare minimum it is agreed that the ordinance must be considered in deciding whether or not there is a nuisance. The zoning law is treated as an expression of the will of the municipality, and must be considered as a factor in favor of the use made of the land."

In this case the zoning of the area was agricultural and not residential. A gun club clearly comes within the contemplation of this zoning description and this must be considered an important factor in determining whether such a club is a nuisance.

Considering all of the factors and surrounding circumstances, it is this Court's determination that the gun club itself does not constitute a nuisance *per accidens* which is a nuisance in light of the surrounding circumstances. See *Bluemer* v. *Saginaw Oil Service* (1959), 356 Mich 399, 411.

Whether some of the activities of the gun club constitute a nuisance is a question which this Court must next consider. Noise is raised by the plaintiffs as their prime objection to the gun club's continued use of its ranges for private pistol and rifle practice, or for competitive meets. The theory of when noise is a nuisance is clearly stated in *de Longpre* v. *Carroll* (1951), 331 Mich 474, 476, wherein the Court said:

"No one is entitled, in every location and circumstance, to absolute quiet, * * * in the use and enjoyment of his property; but when noises are unreasonable in degree, considering the neighborhood in which they occur and all the attending circumstances, * * * then an actionable nuisance may

be said to exist; and in applying these tests the question presented is one of fact rather than law. See 39 Am Jur, Nuisances, §§ 47, 53, 59, and *People* v. *Wabash R. Co.*, 197 Mich 404, and *Waier* v. *Peerless Oil Co.*, 265 Mich 398."

Thus, once again we are faced with a determination of a fact in light of the surrounding circumstances; was the noise so great so as to constitute a nuisance *per accidens?* A close review of the record and exhibits presented to this Court reveals ample evidence from which the trier of fact could find that with the restrictions imposed, there was no nuisance. The record is extensive and reveals that the trial judge took great pains to get the total picture, by going from his courtroom to the scene, which he viewed by air as well as by land. The trier of fact was also present at two demonstrations of the firing ranges at which sound measurements were taken from the respective plaintiffs' properties. Accordingly, we feel that great weight must be given to the findings of fact of the trial judge, who has exhaustively pursued a just determination in this trial. See *de Longpre* v. *Carroll, supra,* and *Cullum* v. *Topps-Stillman's, Inc.* (1965), 1 Mich App 92.

The plaintiffs cite *Township of West Bloomfield* v. *Chapman* (1958), 351 Mich 606, in support of their contention that the noise emanating from the defendants' land is in fact a nuisance. The most crucial distinguishing feature is that in the *Chapman Case* the noise was coming from a machine shop in an area zoned residential and not from a gun club in an area zoned agricultural. This distinction is essential to our understanding of the effect surrounding circumstances have on a determination of what constitutes a nuisance. The noise level must be looked at in each case in light of what goes on around the property. Many of the cases the plaintiffs cite to the Court in their brief do in fact sup-

port this proposition. See *Kobielski* v. *Belle Isle East Side Creamery Co.* (1923), 222 Mich 656 (31 ALR 183); *Kilts* v. *Board of Supervisors of Kent County* (1910), 162 Mich 646; *Borsvold* v. *United Dairies, supra; Waier* v. *Peerless Oil Co., supra.*

It is the determination of this Court from the record that the noise level emanating from the defendants' property, as restricted by the trial court's conditional order, does not constitute a nuisance.

The remaining question that must be resolved is whether the alleged danger to the surrounding community from the defendants' rifle and pistol ranges constitutes a nuisance.

In facing this question, the court is moved by two considerations. First, the surrounding circumstance argument points out that this area is in fact agricultural in the main and not residential; that the area is one in which hunting is allowed, and that the ranges of the gun club have been built with most stringent safety precautions. This first consideration must be looked at in light of the second, the harm or danger suffered by the plaintiffs from the conduct of the defendants. The record of the evidence presented at trial convinces this Court that the harm or danger is a fear of the mind and not an actual danger to the plaintiffs. This then becomes a question of weight of evidence for the Court. Does the harm or danger to the plaintiffs outweigh all the facts alluded to in the first consideration? As the supreme court so aptly stated in *Weber* v. *Pieretti* (1962), 72 NJ Super 184 (178 A2d 92)* at p 205:

"The utility of the defendant's conduct is to be weighed against the *quantum* of harm to the plaintiff. *Sans* v. *Ramsey Golf & Country Club, Inc.,* 29 NJ 438 (149 A2d 599)."

---

Case affirmed (1962), 77 NJ Super 423 (186 A2d 702).

On this balancing scale, the judgment of this Court must be in favor of the gun club, as the plaintiffs have not produced sufficient evidence to tip the scales in their favor. We turn to Federal authority to find precedent that squarely supports this position, *Commerce Oil Refining Corp.* v. *Miner* (CA 1, 1960), 281 F2d 465, 474:

"But, to secure an injunction against a neighbor's prospective use of his property, *more must be shown than the mere possibility or even probability of harm resulting from that use.*" (Emphasis supplied.)

As for the Michigan authority cited by plaintiffs in support of their contention of an enjoinable danger, both cases (*Brink* v. *Shepard* [1921], 215 Mich 390 [18 ALR 116], and *Rockenbach* v. *Apostle* [1951], 330 Mich 338) are distinguishable from the case at bar on the quantum of proof theory espoused above. In *Brink* and *Rockenbach* the quantum of harm to the plaintiffs outweighed the utilization of the property by the defendant. In the case at bar it did not.

Thus, after a complete review of the record and the issues raised, this Court finds itself in complete accord with the findings of the trial court.

Affirmed. Costs to the appellees.

J. H. GILLIS and QUINN, JJ., concurred.