**UNITED STATES of America, Plaintiff,**

v.

**Anthony MARLS, Defendant.**

**No. 01–80332.**

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 19, 2002.

Patricia C. Uetz, United States Attorney's Office, Detroit, MI, for Plaintiff.

Federal Defender, Federal Defender Office, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING MOTION TO SUPPRESS

ROBERTS, District Judge.

### I. INTRODUCTION

Defendant Anthony Marls is charged with being a Felon in Possession of Firearm in violation of 18 USC § 922(g)(1). A Motion to Suppress the firearm filed by Defendant was referred by this Court to Magistrate Judge Virginia Morgan for a Report and Recommendation ("R & R"). After conducting an evidentiary hearing, Magistrate Morgan recommended that the Court grant Defendant's motion. The Government has filed objections. For the reasons stated below, the Court **ADOPTS** the Magistrate's R & R.

### II. BACKGROUND

On March 17, 2001, Officer Malik Jones was acting as a decoy in a prostitution sting operation. If someone made an offer to engage in an act of prostitution to Officer Jones, she was to give a pre-arranged signal to a nearby police car (the Eye) which would signal another police car (the take down crew) which would immediately arrive on the scene.[1] Under normal circumstances, the responding officers would detain the motorist, issue an appearance ticket for the misdemeanor offense of Offer to Engage (OTE) and confiscate the motorist's vehicle pending civil forfeiture proceedings. The confiscated vehicle would then be driven by the responding officers to a staging area. At the staging area, the motorist would be given a trash

---

1. The Magistrate indicates that testimony was given that the decoy operation was set up in the area of Woodward and Alger in response to complaints of prostitution in that area. However, there were no other individuals on the street with Officer Jones on the night in question.

bag for the items he/she wished to remove from the vehicle and allowed to leave via waiting taxi cabs. At some point, the responding officers would take an inventory of the contents of the vehicle.

On that date, Defendant allegedly solicited Officer Jones. She testified that Defendant waved at her to approach his vehicle, his employer's catering van. She approached on the driver's side. A conversation ensued in which the Defendant asked if she was the police, to which she responded, "No." Defendant then said that he wanted "to fuck." Officer Jones said, "What are you talking about?" Defendant then displayed paper currency. This is the extent of Officer Jones' conversation with Defendant, according to her.

Following this exchange, Officer Jones signaled the Eye with a flashlight. The Eye could see Officer Jones conversing with Defendant, but could not hear them. The conversation was not captured by a recording or other device. The Eye radioed the "take down crew," Officers Mario Neal and Steve White. Officers Neal and White then responded in a fully marked scout car and effected a traffic stop of Defendant's van.

Officers Neal and White testified that, prior to receiving their signal, they had been around the block in an alley. They did not observe the alleged exchange between Defendant and Officer Jones; they acted solely on information received from the Eye.

The officers ordered Defendant out of the van, handcuffed him and placed him in their squad car. However, Officer Neal testified that Defendant was not arrested at this point; he was merely being detained. It was not until the gun was found that Neal said Defendant was under arrest. Officer Neal got into Defendant's van, looked around the front and back seats with a flashlight, did not see any-

thing and drove it less than one half mile to a nearby high school parking lot where other seized cars had been taken.

There are some conflicts in Officer Neal's testimony regarding the subsequent sequence of events. At the earlier preliminary exam and the evidentiary hearing, on direct examination, Officer Neal testified that he found a 9mm semi-automatic handgun between the front seats during an inventory search. (Prelim Exam Tr at p. 14). However, at the evidentiary hearing on cross examination, he testified that he noticed the gun as he got out of the van, prior to doing the inventory search, which would have been conducted by another officer. (Evidentiary Hearing Tr at pp. 45–46). Officer White testified that, after the initial stop, he did not see a gun when he looked in the van with his flashlight to see if anyone else was inside.

With Officer Neal's discovery of the firearm, the officers arrested Mr. Marls for carrying a concealed weapon, a felony. He was still issued a ticket for the OTE.

Defendant was ultimately charged by the State of Michigan with carrying a concealed weapon, firearm possession by a felon and felony firearm. These charges were dismissed to allow federal prosecution.

## III. ANALYSIS

### A. Whether Defendant's Arrest Was In Violation of Michigan State Law

Citing *People v. Dixon*, 392 Mich. 691, 696–699, 222 N.W.2d 749 (1974), the Government asserts that the "police team" theory of probable cause applies in this case. That theory is that the facts observed by various officers may be combined and relayed among the officers to satisfy the presence requirement for a misdemeanor arrest. Here, one officer indicated to her sergeant that a crime had

been committed. The sergeant radioed the surveillance team who moved in to effect the arrest. Under Michigan law, this is a valid misdemeanor arrest according to the Government.

The Magistrate's finding that the "police team" theory does not apply to the 90-day misdemeanor with which Defendant was charged is correct. An officer may not effect an arrest for a misdemeanor without a warrant unless the misdemeanor was committed in the officer's presence. MCL 764.15(a); *People v. Spencley,* 197 Mich. App. 505, 507, 495 N.W.2d 824 (1992). An exception to this rule, however, was created by the Michigan Supreme Court in *People v. Dixon,* 392 Mich. 691, 696–699, 222 N.W.2d 749 (1974). In *Dixon,* the court adopted the "police team" theory whereby an officer can satisfy the "presence" requirement by relying upon facts observed by other officers. *Id.*

In a recent amendment to M.C.L. § 764.15[2], the Michigan legislature effectively codified the "police team" theory by adding language allowing an officer to utilize information from other officers to make a warrantless arrest of misdemeanors committed outside the officer's presence, for misdemeanors punishable by 92 or more days:

(1) A peace officer, without a warrant, may arrest a person in any of the following situations:

\* \* \* \* \* \*

(f) The peace officer has received positive information broadcast from a recognized police or other governmental radio station, or teletype, that affords the peace officer reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it. MCL 764.15(1)(f).

Before this amendment, an officer was only permitted to utilize information obtained from other officers to establish probable cause to believe that a felony had been committed:

(1) A peace officer, without a warrant, may arrest a person in any of the following situations:

\* \* \* \* \* \*

(f) When he has received such positive information broadcast from any recognized police or other governmental radio station, or teletype, as may afford him reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it.

■ It is undisputed that the offense with which Defendant was charged, solicitation/offering to engage was only a 90-day misdemeanor at the time of his arrest. Because the legislature expressly limited the application of the "police team" theory to offenses punishable by at least 92 days, the Court must presume that the legislature intended to exclude those offenses punishable by less than 92 days. Consequently, the "police team" theory does not apply to the offense for which Defendant was charged. Accordingly, under state law, Officers Neal and White were not permitted to rely upon the "signals" from Officer Jones and the Eye to effect an arrest of Defendant for solicitation/OTE, since the alleged misdemeanor offense was not committed in their presence.

However, after finding that the officers did not have authority to arrest Defendant for the charged misdemeanor, the Magistrate did not address whether the officers had any authority to stop and detain defendant in order to issue an appearance

**2.** The amendment became effective August 21, 2000.

ticket.[3]  MCL 764.9c(1) only indicates that an officer who has effected a warrantless arrest for a misdemeanor or ordinance violation has the discretion to issue an appearance ticket and release the individual from custody:

> [I]f a police officer has arrested a person without a warrant for a misdemeanor or ordinance violation for which the maximum permissible penalty does not exceed 93 days in jail or a fine, or both, instead of taking the person before a magistrate and promptly filing a complaint as provided in section 13 of this chapter, the officer may issue to and serve upon the person an appearance ticket as defined in section 9f of this chapter and release the person from custody.

The Court will discuss this in the context of its Fourth Amendment analysis below.

## B. Whether An Arrest Invalid Under State Law Necessarily Requires Suppression of Evidence

While the Government initially made arguments that several "search incident" theories would apply to justify the search which uncovered Defendant's weapon, it now seems to concede that Defendant was not lawfully "arrested" for solicitation and, therefore, the "search incident" theories do not apply.  However, the Government objects to the Magistrate's finding that "without evidence of felonious activity and/or a judicial complaint for forfeiture, the seizure of the vehicle was unreasonable under the Fourth Amendment."  (R & R at 11).

The Government contends that even if Defendant's detention and the subsequent seizure did not comply with Michigan law, the misdemeanor citation and subsequent seizure and search of the van were constitutionally valid.  The Government further argues that the commission of a felony or the issuance of a warrant with which to seize a vehicle are only two of several legitimate reasons for which a vehicle may be searched and/or seized.  Here, the Government argues that Defendant's van was seized based upon its use in activity which is considered a public nuisance—solicitation.  The Government argues that a warrant was not necessary because police are permitted to seize property which they believe to be eligible for forfeiture as contraband, without a complaint for forfeiture having been filed.

Although the Supreme Court has not addressed this issue directly, Michigan courts have consistently held that the per se exclusionary rule does not apply where an arrest is statutorily invalid but constitutionally valid.  Most recently, the Michigan Supreme Court in *People v. Hamilton,* 465 Mich. 526, 532–533, 638 N.W.2d 92 (2002) held that the "Fourth Amendment exclusionary rule only applies to constitutionally invalid arrests, not merely statutorily illegal arrests."  In *Hamilton,* the defendant had moved for dismissal of a drunk driving charge because he was arrested by an officer acting outside of his jurisdiction.  465 Mich. at 527, 638 N.W.2d 92.  The Supreme Court agreed with the Court of Appeals that, under the circumstances, defendant's arrest lacked statutory authority.  *Id* at 531–532, 638 N.W.2d 92.

However, the Court disagreed with the Court of Appeals' conclusion that the fact

---

**3.**  An appearance ticket is "a complaint or written notice issued and subscribed by a police officer ... directing a designated person to appear in a designated local criminal court at a designated future time in connection with his or her alleged commission of a designated violation or violations of state law or local ordinance for which the maximum permissible penalty does not exceed 93 days in jail or a fine, or both."  MCL 764.9f.

that the arrest was illegal warranted exclusion of the evidence as a remedy and stated that the fact that "the officer acted without statutory authority does not necessarily render the arrest unconstitutional." *Id* at 532, 638 N.W.2d 92. The Court further stated that constitutional validity is determined by whether probable cause existed at the moment the arrest was made by the officer. *Id* at 533, 638 N.W.2d 92 (quoting *People v. Lyon*, 227 Mich.App. 599, 611, 577 N.W.2d 124 (1998), *app den*, 459 Mich. 882, 586 N.W.2d 745 (1998)). Further, a finding of probable cause for either a felony or a misdemeanor is sufficient under the Fourth Amendment. *Id* at 533, 638 N.W.2d 92.

Likewise, in *People v. Lyon*, 227 Mich. App. 599, 577 N.W.2d 124 (1998), *app den*, 459 Mich. 882, 586 N.W.2d 745 (1998), the Michigan Court of Appeals held that defendant's statutorily invalid arrest was, nevertheless, constitutionally valid. In *Lyon*, a state trooper responded to a report of an automobile parked on an exit ramp of Interstate–75. 227 Mich.App. at 601, 577 N.W.2d 124. Upon arrival, he found the parked car partially blocking the exit lane, and defendant and a second man standing in the vicinity arguing over the keys. *Id* at 601–602, 577 N.W.2d 124. Defendant admitted driving the car and parking it as it was found. *Id* at 602, 577 N.W.2d 124. The second man also informed the officer that he had found the defendant asleep behind the wheel and subsequently took the keys to prevent him from driving. *Id.* Defendant requested a breath test, which he failed, as well as three of four field sobriety tests. *Id.* Based upon this information, the officer arrested defendant for the misdemeanor offense of operating a motor vehicle while

under the influence of intoxicating liquor. *Id.* After his arrest, the officer read defendant his chemical test rights and asked if he would submit to a blood alcohol test. *Id.* Defendant agreed and lab tests revealed a .34 percent blood alcohol content.

Defendant moved to suppress the evidence obtained after his arrest, arguing that his arrest was illegal because the misdemeanor offense did not occur in the presence of the arresting officer. *Id.* The district court denied the motion, finding that the vehicle accident exception to the warrant requirement applied.[4] *Id* at 602–603, 577 N.W.2d 124. The circuit court affirmed. *Id* at 603, 577 N.W.2d 124. The Court of Appeals reversed the district court's order denying defendant's motion to suppress because the officer did not observe defendant operating the vehicle and it found that an improperly parked vehicle does not constitute an accident sufficient to invoke the vehicle accident exception. *Id* at 604, 577 N.W.2d 124.

However, the court went on to find that the fact that the arrest was statutorily invalid did not necessarily require suppression of the evidence gained after defendant's arrest. The court stated that, "Michigan courts have distinguished between constitutionally invalid and statutorily invalid arrests and have refused to apply the exclusionary rule to mere statutory violations." *Id.* at 611, 577 N.W.2d 124 (citing *US v. Copeland*, 51 F.3d 611, 615 (6th Cir.1995), *cert den*, 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995)). Indicating that constitutional validity depends upon whether probable cause existed at the time of the arrest, the court further stated that "[p]robable cause re-

4. M.C.L § 764.15(1)(h) provides that an officer may arrest a person without a warrant when the peace officer has reasonable cause to believe that the person was, at the time of an accident, the driver of a vehicle involved in the accident and was operating the vehicle in violation of certain provisions of the Michigan vehicle code.

quires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). See also *People v. Burdo*, 56 Mich.App. 48, 52, 223 N.W.2d 358 (1974) (declining to fashion an exclusionary rule with respect to statutorily illegal arrests).

■ Based upon the foregoing, the Court finds that the fact that Defendant's arrest was statutorily invalid does not require the Court to impose the exclusionary rule. Rather, the Court must determine whether the stop and arrest were constitutionally valid, which, as stated in *Hamilton* and *Lyon*, depends upon whether the arresting officers had probable cause to arrest defendant for either a felony or a misdemeanor. Moreover, "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *Lyon*, 227 Mich.App. at 611, 577 N.W.2d 124.

■ In this case, the arresting officers detained Defendant for the purpose of issuing him a citation for accosting and soliciting. The officers effected the stop following a series of pre-arranged signals and communications from the decoy and her superior officer, which indicated to the officers that a criminal act had taken place and identifying Defendant as the perpetrator. Because the alleged crime was not committed in the officer's presence, his arrest was in violation of M.C.L. § 764.15(1)(f). However, the officers' reliance upon pre-arranged signals from fellow officers was sufficient to establish "a probability or substantial chance of criminal activity." *Lyon*, 227 Mich.App. at 611, 577 N.W.2d 124. Therefore, there was probable cause under the Fourth Amendment for the officers' detention of Defendant for the purpose of issuing an appearance ticket (or effecting a misdemeanor arrest), and suppressing the evidence is not mandated merely because the arrest was invalid under state law.

## C. Whether The Seizure And Search of Defendant's Van is Justified Under Michigan's Public Nuisance Law

The Government also attempts to justify the seizure on the ground that Defendant's car was forfeitable contraband within the meaning of Michigan's nuisance abatement statute. MCL 600.3801. That statute provides:

Any ... vehicle ... or place ... used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons ... is declared a nuisance, and the furniture, fixtures, and contents of any ... vehicle ... or place ... are also declared a nuisance ... and ... shall be enjoined and abated as provided in this act and as provided in the court rules. Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance.

"Assignation" has been defined, for purposes of the nuisance abatement statute, as encompassing:

[I]nstances of accosting and soliciting for purposes of prostitution because such instances involve the making of an appointment for the purpose of prostitution. We find that limiting this definition to the making of an appointment For [sic] the purpose of prostitution is consistent with the apparent legislative intent to eliminate the use of property in connection with prostitution.

*Michigan v. Levenburg*, 406 Mich. 455, 466, 280 N.W.2d 810 (1979), *abrogated on*

*other grounds, Michigan v. Bennis,* 447 Mich. 719, 527 N.W.2d 483 (1994), *aff'd, Bennis v. Michigan,* 516 U.S. 442, 466, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).

The Government asserts that Michigan law does not require that an act of prostitution take place in the vehicle in order for it to be forfeited. The Government contends that the act constituting the nuisance is the solicitation of an act of prostitution, and that the car itself is the nuisance because it was the place where the request for an act of prostitution occurred. Further, the Government argues that the van contributed to a "public nuisance" in the area of Defendant's arrest because Defendant used his van to solicit an act of prostitution. This, too, would make the car subject to forfeiture.

The Government asserts that the officers testified that they work on a prostitution sting team every night and that, in March 2001, over 100 vehicles had been seized. Further, the Government implies that the officers would not have been in the area in question if there was not a recognized problem in that area. This, according to the Government, would be sufficient under the abatement statute to allow forfeiture.

Based upon the *Levenburg* court's definition of assignation, the Government argues that the legislative intent of the abatement statute was to eliminate the use of property in connection to prostitution. Therefore, seizure of Defendant's vehicle was proper because Defendant's vehicle was used to transport him to the place where he allegedly solicited the decoy for an act of prostitution, which was to take place in the vehicle. However, no evidence was presented at all that the act of prostitution, if solicited, was to take place in Defendant's van.

Defendant argues in response that the Government has failed to demonstrate that his vehicle is a public nuisance. Defendant cites *Michigan v. Bennis,* 447 Mich. 719, 729–734, 527 N.W.2d 483 (1994), *Bennis v. Michigan,* 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), for support, where the Court found that the record before it established that there was a public nuisance in the particular neighborhood where the defendant engaged in an act of prostitution and that the defendant's one act contributed to the existing, proven nuisance. Defendant contends here that the proofs nowhere approach the proofs in the record in *Bennis* concerning the public nuisance, and that the Government presented no evidence to establish that there was, in fact a nuisance, which is a prerequisite for the application of the abatement statute. Moreover says Defendant, there is no evidence that Defendant engaged in any sexual activity or prostitution, and that evidence of alleged solicitation is so slim that the statute simply should not be invoked.

Although the Defendant argues that the evidence is scant that the Defendant was soliciting an act of prostitution, the Court has already held that there was probable cause for the police to arrest him for making an offer to engage, an offer that he made from his car. Thus, the Court finds that Defendant did use his vehicle for purposes of assignation within the meaning of M.C.L. § 600.3801. *Michigan v. Levenburg,* 406 Mich. 455, 280 N.W.2d 810 (1979).

■ However, the general assertions made by the Government that a public nuisance existed in the area where the Defendant was arrested fall short of the requirements set forth by the Court in *Bennis.* If this were a nuisance action, the state court would be required to make a case by case determination based on the industry, character, volume, time and duration of the alleged nuisance. *Marshall v. Consumers Power Co.,* 65 Mich.App.

237, 237 N.W.2d 266 (1975), and the question of what constitutes a nuisance is one that cannot be considered in a vacuum; activity must be viewed with regard to surrounding circumstances. *Oak Haven Trailer Court, Inc. v. Western Wayne County Conservation Ass'n,* 3 Mich.App. 83, 141 N.W.2d 645 (1966), *aff'd,* 380 Mich. 526, 158 N.W.2d 463 (1968).

These announced standards, coupled with that announced in *Bennis* —that a nuisance must be known to exist in the area at issue—lead this Court to conclude that the Government has not sustained its burden to prove that a public nuisance existed sufficient to justify the forfeiture of Defendant's van for contributing to an ongoing, established nuisance.[5]

The remaining issue is whether the single use of his car for assignation purposes, can result in the forfeiture of the car itself as a nuisance.

With respect to this, the only evidence offered by the government that Defendant's car constitutes a "public nuisance" is the same evidence it offered with respect to the vehicle contributing to an existing nuisance condition. The Court finds this argument unavailing.

In *Bennis,* the court upheld the application of the nuisance abatement statute where the defendant had engaged in an act of fellatio with a prostitute in a neighborhood known for illicit sexual activity. The court made a specific finding that the defendant's conduct was lewd. The court reviewed the extent of activity required to constitute a nuisance to determine whether one act of prostitution was sufficient to fall within the statute's definition of "nuisance." The court concluded that the record in that case established that there was

a public nuisance in that particular neighborhood and that Bennis' act contributed to that existing nuisance. *Bennis,* 447 Mich. at 734, 527 N.W.2d 483. However, the court noted that a vehicle could not be abated in the same situation in another community where no nuisance condition existed:

> We note that our position is limited to situations in which a nuisance condition exists, regardless of the city. Therefore, a vehicle could not be abated if the same situation arose in another area of Detroit, such as Palmer Woods, where certainly no such nuisance condition exists. *Bennis,* 447 Mich. at 734 n. 22, 527 N.W.2d 483.

This seems to indicate that at least for purposes of prostitution, a vehicle cannot be abated as a nuisance in and of itself; it must contribute to an existing condition.

**CONCLUSION**

█ For the above reasons, the Court finds that the Government has failed to sustain its burden to prove that Defendant's van was forfeitable contraband within the meaning of M.C.L. § 600.3801. Consequently, the nuisance abatement statute did not provide the officers with authority to forfeit Defendant's vehicle due to an alleged act of lewdness, assignation or prostitution. Thus, the arresting officers had no legal authority to seize or search defendant's van. *Knowles v. Iowa,* 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (motion to suppress granted where officer exercised his discretion to issue a citation rather than arrest defendant, but still conducted a full search of defendant's car absent consent or probable cause).

---

**5.** In fact, at the hearing held by this Court on September 6, 2002, Defendant asserted that the van in which he allegedly made the OTE had been returned to its owner, his employer, and no forfeiture proceedings had been instituted. The Government did not dispute this.

In *Knowles,* the Court noted that there are two historical justifications for a "search incident to arrest": 1) the need to disarm a suspect in order to take him/her into custody, and 2) the need to preserve evidence for later use at trial. 525 U.S. at 116, 119 S.Ct. 484. Where, as in this case, the officer stopped the defendant for the purpose of issuing a citation only, the Court found that neither of these exceptions applied to justify the officer's search of defendant's vehicle. *Id* at 117–118, 119 S.Ct. 484.

In this case, there is no basis for finding that the search of Defendant's car was incident to arrest; Defendant did not consent to the search, and; the Government has not pointed to any evidence or testimony which otherwise indicates that the officers had probable cause to believe that a crime had been committed, other than the alleged act of solicitation. Because the seizure and subsequent search were invalid, the evidence discovered pursuant to the same must be suppressed. Defendant's motion to suppress is **GRANTED.**

**IT IS SO ORDERED.**