STORY ET AL., RESPONDENTS, v. MONTFORTON ET AL., APPELLANTS.

(No. 8,166.)

(Submitted March 21, 1941.   Decided April 24, 1941.)

[113 Pac. (2d) 507.]

*Mr. H. A. Bolinger, Sr.,* and *Mr. H. A. Bolinger, Jr.,* for Appellants, submitted a brief; the former argued the cause orally.

26

*Mr. Seth F. Bohart,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This action was commenced in a justice's court in Gallatin county. From a judgment for plaintiff, appeal was taken to the district court of that county and this appeal is taken from the judgment for plaintiff in the district court.

The complaint alleges the sale and conveyance to defendants of certain lots in the city of Bozeman, including the two here in question, and seeks recovery of the sum of $150 as the balance of the purchase price. The defense to the action which appears from the answer and the testimony is that there was an agreement between the parties that the sum sued for was not to be paid until the plaintiffs furnished an abstract showing a "good, clear record title" to these lots and that this the plaintiffs had failed to do.

The testimony is that negotiations for the sale and purchase of the lots had commenced some time prior to July 27, 1936, and that a price of $2,000 had been agreed upon for all of the lots including these two. As a part of the transactions leading up to that date, an abstract of title was prepared and certified as of that date. The testimony of one of the plaintiffs as to what transpired on that date is that he, in the company of the other plaintiff, his wife, went to the office of the defendant's attorneys and that at that time the abstract as then certified was before the counsel for the defendants. He testified that objections were made to the title as disclosed by the entries in the abstract and that it was then agreed that the sum of $1,850 was to be paid then and a warranty deed was to be delivered to the defendants and that the abstract was to be continued to show a "good, clear record title" to these lots, and that when that abstract showing these things was delivered to the defendants, then the defendants were to pay the $150 for which this suit was brought. Subsequently other entries were made in the abstract. The only one affecting the title to these lots is an affidavit by George Y. Patten, and with this extension the abstract was tendered by plaintiffs "as compliance with our agreement to furnish an abstract showing clear title."

At the outset we are met with the argument of the plaintiffs that the agreement as to the $150 was merged in the warranty deed upon its acceptance by the defendants. The applicable rule is found in 17 C. J. S., Contracts, section 381, p. 872: "A valid written contract merges all prior and contem-

poraneous negotiations on the subject, *but distinct agreements are not merged*," etc. (See, also, 17 C. J. S., p. 875.) The testimony shows that the agreement as to the $150 was a distinct collateral one which would not necessarily merge in the deed. A case in point is *Thordson* v. *Kruse,* 173 Iowa, 268, 155 N. W. 334, 336, where the court held as to certain things that the acceptance of the deed resulted in a merger, but as to an agreement similar to the one here wherein the seller agreed "to furnish an 'abstract showing clear title to the purchaser,' " the court held there was no merger as "this undertaking was an agreement collateral to anything contained in the deed, and therefore not necessarily merged therein." The court went on to say that whether there was a merger depended on the intention of the parties, and quoted from *Reid* v. *Sycks,* 27 Ohio St. 285, where it is said: "In all cases of stipulations in a preliminary contract for the sale of land, of which the deed is not a performance, the true question is, whether the parties have surrendered those stipulations. This is a question of intention of the parties. The evidence of that intention may exist in or out of the deed. There is no presumption that a party, in giving or accepting a deed, intends to give up the covenants of which the deed is not a performance or satisfaction."

Considering the testimony as to the agreement here, in the light of the rules announced, there can be no question but that there was no merger. The agreement was made at the same time that the deed was delivered and so far as the rest of the transaction is concerned failure on the part of either the plaintiffs or the defendants to perform this distinct agreement would have no effect. Failure on the part of the plaintiffs to complete the abstract so as to show by it a good, clear record title would be no basis for the rescission of the purchase and sale agreement.

The objection made by the defendants to the record title as revealed by the abstract when it was presented to them on July 27 concerns the effect of a conveyance of the lots in question to A. Lamme & Co. in 1885. While the title stood in this way,

A. Lamme died. The abstract shows, in abbreviated form, the probate proceedings, and the petition and other documents in those proceedings refer to the fact that A. Lamme had a partnership interest in real estate, and that the partner of A. Lamme was one John S. Mendenhall. Ed B. Lamme, as shown by the decree of distribution in the abstract, succeeded to a two-fifteenths interest in the property of A. Lamme. Subsequently he conveyed a one-fifteenth interest to these two lots to a predecessor in title of plaintiffs.

It is the position of the defendants that a conveyance to A. Lamme & Co. operates to vest the legal title in A. Lamme since a partnership as such cannot own real property, and since it is the rule that where but one of the partners is named full legal title vests in him. (47 C. J. 756.) And if A. Lamme owned the full legal title to the lots in question, then Ed B. Lamme, as his heir, had a two-fifteenths interest in the property rather than merely a one-fifteenth interest.

The trial court found that A. Lamme and Mendenhall were partners, each owning a one-half interest in these lots. The various ex parte statements, affidavits and the testimony from the witness stand indicate that this was the fact. But the difficulty is that according to the agreement between the parties it was the duty of the plaintiffs to show that fact by conclusive record entries in the abstract. The abstract fails to show that. The entries in it which tend to show the existence of the partnership and the interest each partner had are all ex parte, beginning with the deed dated May 1, 1890, which purports to convey to a predecessor in title of these plaintiffs an undivided one-half interest in these lots from John S. Mendenhall and his wife. This, taken with the form of the deed to A. Lamme & Co., is a very strong indication of the existence of the partnership and of the fact that Mendenhall owned a one-half interest, leaving not more than a half interest in A. Lamme. However, it is not conclusive. Other entries appear in the abstract in the nature of affidavits and ex parte statements to the effect that Mendenhall and A. Lamme were partners, each owning a

one-half interest in the property, and were these matters properly presented in an action to quiet title of this property they would have very great weight. But they do not show "good, clear record title" as agreed between these parties.

Subsequently there appears in the abstract a deed from Maurice Lamme and wife to plaintiffs' predecessor. There is nothing in the abstract by way of record instruments to show what interest Maurice Lamme had in this property, if any. The conveyance was in the form of a quitclaim and it is recited that it was given for the purpose of quieting the title to these lots. The affidavit of Patten, which was placed in the abstract after July 27 and which plaintiffs considered to be sufficient to cure the defects objected to by the defendants, and which was relied upon by them as full compliance with their agreement, recites that Ed. B. Lamme, who was the heir of A. Lamme heretofore mentioned, had died leaving as his only heirs his widow and Maurice Lamme; that subsequently the widow died, leaving as her only heir Maurice Lamme; and that neither Ed B. Lamme nor his widow left any creditors. No probate of the estate of either Ed B. Lamme or his wife has been had and proof of heirship and the fact that neither left any creditors is by this affidavit. While the affidavit may be persuasive of the facts sought to be established by it, it has no conclusive effect. (*In re Higgins' Estate,* 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116.) Stripped of the ex parte statements and affidavit, this abstract, so far as those entries based on the record are concerned, shows that the title to a one-fifteenth interest in this property still remains in Ed. B. Lamme.

The court's findings of fact show that it relied upon the affidavit of Patten to establish these facts and concludes that finding by the statement, "The abstract of title was introduced in evidence by the defendants without limitation." Admission of the truth of the affidavit still does not cure the defect so far as the record title is concerned. Defendants do not say the title is bad, but they do say the record title as shown by the abstract is defective and they contracted for a title which appeared by

the record as shown in the abstract to be a good, clear record title. It found that all persons known to have any interest in lots "as disclosed by the abstract" had conveyed to plaintiffs' predecessor; that no one, since 1890, had claimed any interest in the lots through Ed B. Lamme and finally that defendants do not contend that Maurice A. Lamme is not the sole heir of Ed B. and Susie L. Lamme.

Its conclusions of law are that the "title furnished is free from reasonable doubt and there is no reasonable probability that defendants will ever be subject to expense of future litigation to either defend or perfect the same. There is no reasonable possibility that their possession of said lots will ever be disturbed or even questioned." The court further concluded as a matter of law that creditors of Ed B. and Susie L. Lamme, if any, could not subject the lots to the payment of claims.

While the court's findings would be supported by the record if the action were in the nature of one to quiet title, we believe that in view of the agreement they are not sufficient to base this judgment on. The findings show that they are based to a great extent and almost wholly on the ex parte statements appearing by affidavit and otherwise in the abstract and by the testimony adduced in support of the title in the court.

The rule to be applied here, in view of the agreement, we believe to be well stated in 66 C. J. 870: "In the absence of a provision in the contract to the contrary, a 'good' or 'good and merchantable title' within the meaning of a contract of sale generally means such a title fairly deducible of record; and, accordingly, as a general rule a title is not considered good and marketable, and a purchaser will not be compelled to take, or be considered in default for refusing to take, it where it rests in parol or is a materially defective record title which can be cured only by a resort to parol or extrinsic evidence, and about which witnesses might disagree, or which, by lapse of time, death, or some other cause, may not be available in the future when needed, such as ex parte affidavits or writings not subject to registration." (And see *Crosby* v. *Wynkoop*, 56 Wash. 475, 106 Pac. 175.)

See, also, *Campbell* v. *Harsh*, 31 Okl. 436, 122 Pac. 127, 128, where proof of heirship and of the fact of no creditors was contained in an affidavit and the contract was to furnish good title as shown by the record, the court said: "It is urged by plaintiff that this testimony and these affidavits were no part of the abstract tendered him; that, had the latter been so made, not being entitled to record, they constituted no part thereof, and that he should not be compelled to accept a title resting in part in parol. The point is well taken. * * * In *Howe* v. *Coates*, 97 Minn. 385, 107 N. W. 397, 4 L. R. A. (n. s.) 1170, 114 Am. St. Rep. 723, the suit was to compel specific performance of a contract, in effect providing for the conveyance of a marketable title. Speaking to this point, the court said: 'A purchaser under such a contract is not required to resort to evidence dehors the record. It is not sufficient that the title is good in fact; that is, capable of being made good by the production of affidavits or other oral testimony. It must be good of record. In *Fagan* v. *Hook*, 134 Iowa, 381, 105 N. W. 155, 111 N. W. 981, supra, the court said: "The title may be good; but one to whom an abstract showing a good title has been promised as a condition precedent is not bound to accept any evidence thereof, except that contained in the abstract. The vendee in such a case is not required to accept or rely upon parol evidence of title, or information dehors the record, or the word of the vendor." And again (97 Minn. on page 395, 107 N. W. on page 401, 4 L. R. A. (n. s.) 1170, 114 Am. St. Rep. 723), the court said: 'A contract "to convey unto the second party by warranty deed with an abstract showing a good title" refers to the record title which might be epitomized on the abstract. Such a contract calls for a good title on the abstract, or at least of record.' " (See, also, 18 Words and Phrases, Permanent Edition, 438.)

The agreement shows clearly that what defendants asked for ▮ was not a title that could be proven by parol or by ex parte statements, but one which appeared in the abstract to be good by documents which in themselves were conclusive as to what

they contained. If the ex parte statements are disregarded, the abstract shows that A. Lamme owned a one-half interest and that a one-fifteenth interest still stands in the name of Ed B. Lamme. Considered in the light of the agreement and the time and nature of the objection, and without attempting to say whether the title is good or bad, the record is conclusive that plaintiffs have failed to perform under the agreement which is the basis of this suit. The abstract does not show a good, clear merchantable title as agreed.

The judgment is reversed with direction to dismiss the action.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.