No. 12641

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

ROBERT G. SIMKINS and THOMAS G. HAGGERTY,

Plaintiffs and Appellants,

-vs-

MORRIS JAFFE, WILLIAM H. SIPPEL et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Berg, O'Connell, Angel and Andriolo, Bozeman, Montana
Ben E. Berg argued, Bozeman, Montana

For Respondents:

Brown and Gilbert, Bozeman, Montana
Gene I. Brown argued, Bozeman, Montana
Corette, Smith and Dean, Butte, Montana
Kendrick Smith argued, Butte, Montana

---

Submitted: September 9, 1974

Decided: NOV 13 1974

Filed: NOV 13 1974

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by plaintiffs from a summary judgment entered in favor of defendants in a slander of title action entered by the district court of Gallatin County.

The controversy giving rise to this lawsuit started in January of 1971. At that time plaintiffs Simkins and Haggerty were directors of Bridger Bowl, a non-profit corporation created for the purpose of operating skiing facilities in Bridger Canyon near Bozeman, Montana. The defendants--stockholders of the corporation--learned that Plaintiffs were negotiating to sell 170 acres of land at the base of the ski hill. This land had been acquired by plaintiffs in 1966 for $34,000 while both were directors of the corporation and was now being offered for sale to land developers for $450,000. This is how matters stood on January 14, 1971, when the following letter was sent to plaintiffs by defendants' attorney, Gene I. Brown:

January 14, 1971

"Mr. Thomas Haggerty
1209 South 5th
Bozeman, Montana

      and
"Mr. Robert Simkins
1419 South 3rd
Bozeman, Montana   59715

"Gentlemen:

   "This firm has been retained by a number of share-
holders of the Bozeman State Park Recreational Asso-
ciation, Inc., of Bozeman, Montana. It has been widely
rumored that you intend to sell or dispose of all or a
large portion of the land at the base of the Bridger
Bowl Ski Hill acquired from John F. Neuffer. It was the
understanding of these stockholders that the Neuffer
land was acquired by the corporation or that it was
acquired by you individually on behalf of the corpora-
tion. (Emphasis added)

-2-

"The fact that this land was acquired by you at a
time when you were both directors of the corporation
and handling negotiations for the corporation to pur-
chase the land, lends strong support to the conclu-
sions of these stockholders. (Emphasis added)

"As you know, a director of a corporation has cer-
tain well defined duties and obligations to the cor-
poration and stockholders he serves. Stated quite
simply, a director cannot use his position to benefit
himself to the detriment of the corporation. A dir-
ector occupies a fiduciary relationship to the cor-
poration and its stockholders and his acts must be
for the benefit of the corporation and not his own.
(Emphasis added)
"Under the law, stockholders have a right to bring
legal action against officers and directors of a cor-
poration in the right of that corporation based upon
the officers or directors breach of legal duty to the
corporation.

"The stockholders who have contacted me are your
friends and neighbors who have worked with you over
the years to develop Bridger Bowl Ski Area as a com-
munity project. Your contribution in developing this
area is widely acknowledged and it is difficut for
these men to believe you would use your position in
the corporation for your own benefit. For this rea-
son, these people are anxious to have the air cleared
and the rumors stopped. This can be done by a transfer
of the land to the corporation.

"It is the fear of these stockholders that if this
land were to be transferred to an entirely commercially
oriented party, that the character of the ski hill
would be greatly altered or at least the community
would lose control of its future development.

"In order to avoid any misunderstanding, I wish to
point out that if an agreeable arrangement is not
reached immediately, we have been instructed to commence
a lawsuit in the District Court to have the land trans-
ferred to the corporation.

"A copy of this letter is being sent to the Corpora-
tion at its principal office, and copies to each of
the members of the Board of Directors, and is to be
considered a demand upon them to take all steps neces-
sary to insure recovery of the real property and the
return thereof to Bozeman State Park Recreational Associ-
ation, Inc. We further wish by this letter to put all
prospective purchasers of the land on notice that title
to the land is disputed. (Emphasis added)

-3-

"We will be available to discuss this matter with your Attorney at any time. Since time is of the essence, we would appreciate hearing something on this matter within five days in order to avoid litigation.

"Yours very truly,

"BROWN & GILBERT

"BY: /s/ GENE I. BROWN
"Gene I. Brown

"GIB:sh

"cc: Bozeman State Park Recreational
         Association, Inc.
     Bozeman, Montana 59715

     To all members of the Board of Directors of
         the Bozeman State Park Recreational
         Association, Inc.
     Bozeman, Montana 59715

     United Agencies
     1602 West Main
     Bozeman, Montana 59715

This letter was followed up by another letter, dated

February 3, 1971, directed to Robert E. Heath, attorney for

Bridger Bowl:

                                   February 3, 1971

"Mr. Robert E. Heath,
 Attorney at Law
 Holter & Heath
 16 N. Tracy Avenue
 Bozeman, Montana 59715

"Dear Mr. Heath:

"I am writing in reply to your correspondence dated January 28, 1971. I would like to furnish you with the names of our clients. They are as follows: 1) Dick Francis, 2) Volney Steele, 3) Morris Jaffe, 4) Dr. Sippel, 5) Dr. Lensink, 6) Dr. Prunty, 7) Dave Vaughn, and 8) Bill Merrick.

"These above stated stockholders are concerned with the preservation and further development of the family type ski area at Bridger Bowl. The Bozeman State Park

-4-

Recreational Associational, Inc., conceived, financed, and promoted Bridger Bowl on the premise. It appears now that unless some immediate changes are made, the atmosphere at Bridger Bowl may change from a family type recreation area to one that is primarily commercial in character. The tract of land, less the Saint Bernard, presently owned by Simkins and Haggerty, should be acquired by the Bozeman State Park Recreational Association. The value for the basis of this acquisition should be based on the original purchase price of $34,000.00 plus interest subsequent to the September, 1966, purchase date. In the event that the association is not now in a position to assume this financial responsibility, the above named stockholders can arrange for the financing. It can be substantiated by those knowledgeable of the land purchased by Simkins and Haggerty from Mr. Neuffer that the land was to have been purchased for the association, and not for them as individuals. (Emphasis added)

"There is to our knowledge no evidence that the Association ever suggested that Haggerty and Simkins acquire this land in their own names. The terms of this purchase in September, 1966, by Simkins and Haggerty from Neuffer, were approximately $9,000 down and $5,100 annually for 5 years. It would not have been difficult to have this money pledged by interested members of the Association, had an attempt been made to do so.

"It is most desirable that the land in question belong to the Association. Ultimately, much of this land will be utilized for parking, chalet and lift expansion. The balance will serve as an excellent buffer zone for commercial development on adjacent privately owned lands. The appreciation in the value of this tract of land can be attributed almost entirely to the ski lift facilities located thereon. The association built the ski lifts, so it would seem only logical that the Association own the land that is the current hub of this development.

"It is the above named parties sincere hope that Simkins and Haggerty will agree to sell this land to the Association on the terms set forth above. A simple peaceful solution is preferred to more drastic action, which the above named are prepared to take if necessary.

"You have inquired for an explanation of how the directors have breached their duties to the corporation. It should be pointed out that it is not our position that that all of the directors have breached a duty to the Corporation. We are only concerned with the actions of Haggerty and Simkins in acquiring this property which is so vital to the future of the corporation. (Emphasis added)

"It has become obvious that our exchange of letters has only caused confusion and suspicion, for this reason, I wish to make the suggestion that the seven neutral board members meet with our group at the earliest possible date. This will give us an opportunity to present our position and the facts as we know them and to answer any questions the directors may have. Since everyone has in mind the best intersts of the ski hill, it seems appropriate that an effort be made to resolve this problem in some reasonable manner.

"I suggest that we meet this Thursday or Friday, or if this is not feasible, then next Tuesday, at the meeting room of the Chamber of Commerce at 8:00 P.M. A copy of this letter is being sent to each member of the Board.

"It is difficult to arrange a meeting with this number of people, so if this meeting is not agreeable, please let me know. Please contact me as soon as possible to arrange for a time for this meeting.

"Yours very truly,

"BROWN & GILBERT

"By: /s/ GENE I. BROWN
      "Gene I. Brown

"GIB:sh

"cc:  Board members"

Thereafter on June 2, 1971, at the annual meeting of the stockholders of Bridger Bowl, a resolution was passed which in essence authorized the board of directors to take whatever steps necessary to gain title to the disputed land.

On June 4, 1971, plaintiffs made a proposal in an attempt to satisfy the dissident stockholders and on June 11, 1971, entered into a contract with Bridger Bowl whereby they conveyed to Bridger Bowl approximately 70 acres of the disputed land at its 1966 purchase price, plus interest and taxes.

On September 6, 1971, plaintiffs brought this slander of title action. On January 14, 1972, Bridger Bowl brought

suit against Simkins and Haggerty alleging a breach of fiduciary duty and seeking recovery of the balance of the disputed land. As a result of the latter suit, Bridger Bowl acquired an additional 20 acres of land, thus increasing its total holdings in the disputed land to 90 acres. On August 3, 1973, the district court entered its Order and Judgment with respect to the slander of title action. This Order declared, inter alia, that the contents of the letters of January 14, and February 3, 1971, were true, not false, and that as a result of those letters and the stockholders' resolution of June 2, 1971, plaintiffs transferred 70 acres of the disputed land to Bridger Bowl pursuant to the June 11, 1971, argeement. The Order, on the theory of res judicata, also adopted certain amended findings of fact and conclusions of law of the district court in the Bridger Bowl case against Simkins and Haggerty; namely, that the agreement of June 11, 1971, was a good and sufficient accord and satisfaction of the land and title dispute between the parties, and that Bridger Bowl was due an additional 20 acres of land. Summary judgment was thereupon entered for defendants.

The elements of a cause of action for slander of title are set forth in 50 Am.Jr.2d, Libel and Slander, § 541, p. 1060:

> "One who maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damages to the owner, may be held liable in a civil action for damages. The essential elements of the cause of action, which are subsequently discussed, are the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice, and special damages. The action is not for the words spoken, but for special damages for the loss sustained by reason of the speaking and publication of the slander."

The crucial element in this case is the falsity of the words. Defendants chose to stand on the finding of the district court that the letters were true. Plaintiffs take the position that entry of summary judgment in favor of the defendants was improper, since the district court in the Bridger Bowl case against plaintiffs found no breach of fiduciary duty on their part, and therefore a material question of fact has not been resolved. We think plaintiffs' position on this point is unsound. For one thing, the Bridger Bowl case against them involved different facts and different legal principles than the instant case; a finding of one court could very well differ from a finding of the other court. For another, there is substantial credible evidence in the record to support the finding that the letters were true. Approximately six months after the letters were written, and following passage of the resolution by the Bridger Bowl stockholders, 70 acres of the disputed land was deeded to Bridger Bowl by plaintiffs. The Bridger Bowl case against plaintiffs resulted in Bridger Bowl receiving another 20 acres of this land. A very plausible explanation for these events is that plaintiffs had obligations toward Bridger Bowl and were compelled to recognize its claims.

Since we have concluded that plaintiffs have failed to sustain their case with respect to the element of falsity, it is unnecessary to consider the other elements of a slander of title action.

The judgment is affirmed.

_____
                                  Chief Justice

We concur:

_____

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_
                Justices

-9-