No. 85-382

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

T. G. HAGGERTY, a/k/a THOMAS G. HAGGERTY,
R. G. SIMKINS, a/k/a ROBERT G. SIMKINS,
and BRIDGER VILLAGE DEVELOPMENT CORP.,

   Plaintiffs and Appellants,

  -vs-

GALLATIN COUNTY; JOY NASH, RUTH MARY
TONN, and WILBUR VISSER, as County
Commissioners; BRIDGER BOWL, INC.,
et al.,

   Defendants and Respondents.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

  For Appellants:

    Morrow, Sedivy & Bennett; Edmund P. Sedivy, Jr. argued,
    Bozeman, Montana

  For Respondents:

    A. Michael Salvagni, County Attorney, Bozeman, Montana
    Thomas R. Anacker argued, Deptuty County Attorney
    Moore, Rice, O'Connell & Refling; Christopher Manos
    argued for 1st Bank & 1st Trust, Bozeman, Montana
    Gregory O. Morgan argued for Bridger Bowl, Bozeman,
    Montana

---

      Submitted: March 26, 1986

       Decided: April 18, 1986

APR 1 8 1986

Filed:

---
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Appellants brought this action in the District Court seeking an injunction to prevent respondent Bridger Bowl, Inc., from serving beer and wine. In the alternative, appellants sought a rescission of the contract for transfer of lands from appellants to Bridger Bowl. Appellants, Simkins and Haggerty, along with their wives, organized appellant, Bridger Village Development Corporation to handle their interest in lands located in the vicinity of the Bridger Bowl ski area. Respondents Gallatin County, First Trust Company of Montana and First Bank of Bozeman are parties because of mortgage and lease-back agreements entered into by Bridger Bowl with these parties to finance improvements on the property. After trial, the District Court entered findings of fact and conclusions of law and judgment denying any relief to appellants and awarding attorney fees to respondents. Appellants appeal this judgment.

We considered the following issues on appeal:

1. Whether the District Court erred in concluding there is no binding agreement prohibitting Bridger Bowl from conducting commercial activities in the Base Area Chalet.

2. Whether the District Court erred in concluding that the terms of the June 11, 1971, agreement merged into the deeds of December 15, 1972.

3. Whether the District Court erred in concluding that the commercial use limitation on Bridger Bowl lands was void as an unlawful restraint on trade.

4. Whether the District Court erred in concluding that the conduct of commercial activities by Bridger Bowl on lands

other than the parking lot is not a violation of the commercial use limitation in the deed to the parking lot lands.

5. Whether the District Court erred in awarding respondents attorney fees.

Appellant has raised two other issues concerning whether the sale of beer and wine violates the commercial use restriction and whether the county, bank and trust company had notice of the restriction. Our holdings on the other issues makes consideration of these issues unnecessary.

We affirm the District Court's denial of relief to appellant. However, we reverse the court's holding which voided the commercial use restriction as an unlawful restraint on trade. We also reverse the award of attorney fees to respondents.

The parties have been fighting over their respective rights in property near the Bridger Bowl Ski Area for over fifteen years. The record of the parties' previous litigation provides a useful introduction to the current dispute.

The District Court's opinion in Bridger Bowl v. Simkins and Haggerty, No. 19930, Gallatin County, provides an explanation of the original intentions of the parties. Most valuable are items 1 & 2 in the District Court's order dated September 28, 1972, amending its findings of fact and conclusions of law in that case. Those items are as follows:

> 1. In view of the evidence at trial to the effect that Simkins and Haggerty at the time of purchasing the land in question intended to provide land for daytime skiing and uphill transportation needs of Bridger Bowl, but to retain the rest of said Neuffer lands for future development and investment and profit to themselves by furnishing overnight accommodations to skiers; and, in keeping with these purposes Simkins and Haggerty have sold and conveyed to Bridger Bowl approximately fifty (50)

3

acres of ski terrain and fifteen (15) acres of parking at their cost of $200.00 per acre, and Bridger Bowl relying on defendants' assurances to provide lands sufficient to accommodate the needs of daytime skiers and uphill transportation, moved the facilities on to defendants' lands, and

2. By virtue of the great expansion of Bridger Bowl which has created problems for Bridger Bowl in parking and sewage disposal which had not been anticipated or adequately provided for, but which is within the power of Simkins and Haggerty to assist in resolving consistent with their original intention of benefiting Bridger Bowl and themselves;

Thus, the District Court in that earlier case envisioned a symbiotic rather than competitive relationship between appellants and Bridger Bowl whereby Bridger Bowl accommodated the daytime needs of skiers thereby drawing customers to the area and thus providing business for overnight accommodations developed or invested in by appellants. Unfortunately, this spirit of cooperation among the parties has not prevailed, and we are faced with the current litigation.

There were a number of transactions, deeds, escrows and conveyances among the parties leading to this litigation. The following highlights only those details important to the outcome of this case, but the scenario remains complicated.

Bridger Bowl, Inc., is a nonprofit corporation organized for operating and maintaining the Bridger Bowl Ski Area near Bozeman, Montana. The corporation primarily provides uphill transportation to skiers, but it also operates chalets at the base of the area and in Deer Park on the mountain as daytime facilities for the comfort and convenience of the skiers. Both appellants, Haggerty and Simkins, served as directors of Bridger Bowl through fiscal year 1971-1972, Haggerty starting in 1955 and Simkins in 1961.

4

John and Cynthia Neuffer conveyed the tract of land upon which the Deer Park Chalet was subsequently built to Bridger Bowl's predecessor on July 20, 1961, by warranty deed. No reservations or restrictions are on the deed. Then on September 7, 1966, appellants acquired 170 acres of land located just east and at the bottom of the then existing ski area by warranty deed from the Neuffers.

Soon after appellants' purchase of the Neuffer land, Bridger Bowl developed plans to expand downhill by building a new chair lift and chalet further down the hill and on the land that appellants had purchased. Appellants accommodated these plans by granting respondents a permanent easement over portions of the 170 acres for the new lift, ski runs and a parking lot. In addition, on July 20, 1967, appellants deeded one acre of their land to Bridger Bowl without charge. The Base Area Chalet and Alpine lift terminal are now located on this parcel. The deed to this Base Area Chalet parcel contains no restrictions or reservations, but appellants allege that the deed was subject to an oral agreement that Bridger Bowl would not use the acre for commercial activity. The District Court, however, did not allow testimony on this oral agreement.

In 1969, appellants constructed a building on some of their land adjacent to the Base Area Chalet parcel. The building was known as the St. Benard and contained a restaurant, lounge and bar. Later they built a ski shop and deli also on the land adjacent to the Base Area Chalet. Beer and wine are served in the deli. It is undisputed that appellants are interested in limiting competition to these facilities and their future developments in the area.

The land that appellants purchased from Neuffers became the subject of a title dispute and two lawsuits between appellants and Bridger Bowl in 1971-72. Appellants charged Bridger Bowl with slander of title and Bridger Bowl charged appellants with breach of fiduciary duty. This Court's opinion in Simkins v. Jaffe (1974), 165 Mont. 266, 527 P.2d 1195, summarizes the course of the dispute and the litigation. As a result of the dispute and on-going negotiation, appellants entered into an agreement on June 11, 1971, with Bridger Bowl whereby appellants would convey to Bridger Bowl sixty-five acres of the disputed land at the price they had purchased it for. This agreement was subsequently modified by an addendum to include five additional acres for the parking lot area. This addendum was in response to the judge's order in Bridger Bowl's action against appellants. The agreement, addendum and deeds were prepared by appellants' attorneys in consultation with Bridger Bowl's and deposited in escrow. The deeds were subsequently recorded. Neither the June 11, 1971, agreement nor its addendum have been recorded.

Discrepancies between the agreements and deeds with respect to a commercial use restriction are at the basis of this current litigation. We will now outline those discrepancies.

The June 11, 1971, agreement purports to facilitate the conveyance of two parcels of land, Parcel A and Parcel B from appellants to Bridger Bowl. Parcel A includes skiing lands near the base of the ski area described in the agreement as follows:

> All of the sellers' land situate in the
> Southeast Quarter of the Southwest
> Quarter and the Southwest Quarter of the

> Southeast Quarter of Section 19, Town-
> ship 1 North, Range 7 East, M.P.M.,
> which are subject to a ski easement as
> described in Easement No. 3 of the
> easement recorded in Book 24 of Miscel-
> laneous at Page 108 in the office of the
> County Clerk and Recorder of Gallatin
> County, Montana, and as more particular-
> ly described in Exhibit "A" hereunto
> attached and by this reference incorpo-
> rated herein.

Exhibit "A" to the agreement then further describes the land:

> SE¼SW¼ and SW¼SE¼ of Section 19, Town-
> ship 1 North, Range 7 East, M.P.M.,
> Gallatin County, Montana, SAVE and
> EXCEPT the six (6) tracts described as
> follows:  [Exhibit then describes the
> six tracts.]  And subject to easements
> as follows:  [Exhibit A then lists the
> easements.]

This description of Parcel A is interpreted by appel-
lants as including the acre upon which the Base Area Chalet
is located because that acre is in the SW¼ of Section 19 and
is not within any of the six excepted tracts listed in Exhib-
it A.  However, the Base Area Chalet acre was not "sellers'"
land at the time of the June 11, 1971, agreement nor was it
ever subject to a ski easement as the description requires.

Parcel B in the June 11, 1976, agreement consists of
fifteen acres of parking lot land at the base of the ski
area.

The agreement also sets out the following pertinent
miscellaneous provisions:

> D.  That no commercial use shall be made
> nor any building erected on any of the
> lands herein described, except day ski
> lodges, ski patrol, ski school and
> ancillary buildings used in connection
> with the operation of uphill ski lifts
> and motor vehicle parking facilities.
>
> E.  In the event of zoning of the lands
> herein described, the buyer agrees to
> assign all density ratings to the lands
> herein described to the sellers for use
> on their adjacent lands.

By provision D, then, all of the lands described in the agreement are subject to the commercial use restriction, and appellants' interpretation of the June 11, 1971, agreement would also subject the Base Area Chalet to the restriction.

Separate deeds conveyed Parcels A and B. The land description with the deed for Parcel A varies from that in the 1971 agreement in that the deed only utilizes Exhibit A to the agreement as the description. Therefore, the "sellers' land" and "subject to ski easement" language that appears in the agreement is missing in the deed, and the description includes the land where the Base Area Chalet is located. However, the deed for Parcel A also differs from the agreement because the deed does not mention any commercial use restriction, although it does reserve population density rights. The land description in the deed to Parcel A lists all of the easements that appear in Exhibit A to the agreement.

The deed conveying Parcel B contains a commercial use restriction that varies from the one in the June 11, 1971, agreement. The restriction in the deed is as follows: "The use of above described land is restricted to noncommercial, ski related, service activities." Parcel B's deed also reserves population density rights for appellants. The description of Parcel B in the deed only differs from the June 11, 1971, agreement by adding five acres as provided for in the addendum.

Testimony by appellants' attorney as to why the deed to Parcel A contained no commercial use restriction was not allowed at trial. However, the minutes of a meeting by the directors of Bridger Bowl dated December 12, 1972, were admitted as evidence. These minutes were utilized by the

District Court to establish that Bridger Bowl agreed to the commercial use restriction in the deed to the parking lot lands but not in the deed to the skiing lands.

Bridger Bowl has made a couple of transactions to finance improvements at the ski area. On October 10, 1967, Bridger Bowl executed and delivered to First Bank Bozeman a mortgage on the Deer Park Chalet and Base Area Chalet properties in order to secure a $300,000 loan from the bank. On March 1, 1979, Bridger Bowl deeded all of its lands, including the lands involved in the present action, to Gallatin County in order to facilitate the issuance of industrial revenue bonds. As part of the procedure for issuance of the bonds, Gallatin County then leased the property back to Bridger Bowl.

Bridger Bowl has always served food in its two chalets. During the 1982-83 ski season, Bridger Bowl began serving beer and wine in the chalets. Appellants brought this action alleging that the sale of beer and wine breached the commercial use restriction in both the unrecorded 1971 agreement and in the recorded deed to the parking lot parcel. After trial, the District Court denied appellants relief on the bases that the terms of the 1971 agreement had merged in the deeds, and, in any event, the commercial use restrictions were void as illegal restraints on trade. This appeal ensued.

I

Appellants claim the District Court erred in concluding there is no binding oral agreement by which Bridger Bowl is prohibited from conducting commercial activities in the Base Area Chalet. Appellants' primary argument is that the 1971

9

written agreement of June 11, 1971, subjected the Base Area Chalet to a "negative easement" which restricted use of the property to noncommercial activities. In the alternative, they argue that the 1971 agreement is ambiguous, and therefore the District Court should have allowed evidence of the alleged oral agreement for interpreting the written agreement. Finally, appellants have woven in an argument that the 1971 written agreement satisfies the statute of frauds for the oral agreement so that the evidence of the oral agreement is admissible. We can not agree with these arguments.

The 1971 written agreement does not create a negative easement on the Base Area Chalet because the agreement does not concern the chalet property. The 1971 agreement only contracts to convey property described in the written agreement as "sellers' land" that had been "subject to a ski easement." However, the chalet property was conveyed away by appellants to Bridger Bowl in 1967 and had never been subject to the ski easement that was also created for Bridger Bowl in 1967. Since the chalet property did not belong to appellants and was not subject to the easement in 1971, the 1971 agreement had no effect on the Base Area Chalet property. For the same reason, the 1971 agreement cannot satisfy the statute of frauds for any alleged oral agreement that would create a negative easement on the Base Area Chalet land.

The 1971 agreement is not ambiguous with respect to the land it affects. Therefore, the parol evidence rule prevents admission of evidence of an oral agreement to show intent of the parties as to what land was involved. See § 28-2-905, MCA; See also Larson v. Burnett (1972), 158 Mont. 421, 427, 492 P.2d 922, 925. We conclude that the 1971 agreement does

10

not operate to place a negative easement on the Base Area Chalet property.

II

The next issue we considered was whether the terms of the June 11, 1971 agreement had merged into the deeds of December 15, 1972. Appellants point out that there is no express language in the recorded deeds that the parties intended to merge the restrictive provisions of the 1971 agreement into the deeds. Appellants then argue that the commercial use restrictions in the 1971 agreement still apply, regardless of being left out of the deeds. The argument, however, does not benefit appellants because the 1971 agreement does not concern the Base Area Chalet property. We will consider the merger issue, however, so that the parties are fully appraised of their rights in this property that they have feuded over for years.

The applicable rule is that a valid written contract merges all prior and contemporaneous negotiations on the subject, but distinct agreements may not be merged; whether or not there has been a merger depends on the intention of the parties. Story v. Montforton (1941), 112 Mont. 24, 31, 113 P.2d 507, 508. We applied this principle in Thisted v. Country Club Tower Corp. (1965), 146 Mont. 87, 405 P.2d 432, to determine that restrictive covenants contained in an unrecorded contract but not in the subsequent recorded deed were, nevertheless, enforceable. We utilized extrinsic evidence to reach that conclusion and emphasized the following rule, in the opinion:

> The evidence of that intention may exist in or out of the deed. There is no presumption that a party, in giving or

11

> accepting a deed, intends to give up the
> covenants of which the deed is not a
> performance or satisfaction.

405 P.2d at 437.

In the case at bar, there is substantial evidence to support the District Court's conclusion of merger of the contract in the deeds. First of all, the record reflects on-going negotiations between the parties that altered the substance of the 1971 agreement. These negotiations culminated in two deeds--one for the skiing lands and the other for the parking lot lands. The deed to the parking lot lands contains both the commercial use restriction and the density rights reservation from the 1971 agreement. The deed to the skiing lands left out the commercial use restriction, but left in the reservation of density rights and listed all the other easements referred to in the 1971 agreement. Thus, all of the restrictions referred to in the 1971 agreement are included in the deeds; only the commercial use restriction on the skiing lands is omitted. These facts, when coupled with the minutes of Bridger Bowl's December 12, 1972, meeting showing the intention of Bridger Bowl to remove the commercial use restriction from the skiing lands, provide strong evidence that the deeds contain all of the restrictions on the lands that were intended by the parties, and that the contract had merged in the deeds. We will not reverse a conclusion by the District Court that is supported by substantial evidence. Lasey v. Herndon (Mont. 1983), 668 P.2d 251, 40 St.Rep. 1375.

On a related matter, the excluded testimony that appellants contend should have been admitted in order to establish intent would have only provided evidence of unilateral mistake. Unilateral mistake is not sufficient grounds for

12

reforming a written contract. See § 28-2-1611, MCA. Therefore, any error in excluding the testimony was harmless.

The end result of merging the agreement and deeds is that only the twenty acre parking lot parcel is subject to the commercial use restriction.

## III

Appellants next allegation of error concerns the District Court's conclusion that the commercial use limitation on Bridger Bowl land was void as an unlawful restraint on trade. On this point, we agree with appellants. We note, however, that in light of our holding on the previous issues, the restriction applies only to the parking lot land. The outcome of the instant case, therefore, remains the same. We will consider the issue because of its statewide importance and the liklihood of its recurrence.

The applicable statute is § 28-2-703, MCA. It provides:

> Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind . . . is to that extent void.

We have interpreted this statute under facts similar to the instant case in O'Neil v. Ferraro (1979), 182 Mont. 214, 596 P.2d 197. A restaurant operator's lease forbade the landlord and owner of the building to permit a competing restaurant from operating in the building. We held that the lease provision was enforceable despite its restraint on trade because, (1) it was partial or restricted in its operation with regard to time and place; (2) it was based upon good consideration; and (3) it was reasonable because it afforded a fair protection to the interest of the party in

13

whose favor it was made, and was not so large in its operation so as to interfere with the interest of the public. In applying this test to the commercial use restriction alleged by appellants, we find that the conditions of the test are met. The restriction is limited to lands conveyed from appellants to Bridger Bowl and the consideration is that Bridger Bowl was able to acquire the property. Appellants have a reasonable interest in preventing competition to their activities by activities on properties they once owned. The public is not adversely affected to a significant degree, because the services that are denied to them on the restricted lands are available or can be made available on other lands in the same locale.

There is additional authority and precedent for not voiding the commercial use restriction. Montana statutes allow for the creation of covenants and easements governing the right to transact business on land. Section 70-17-101(6), MCA. Montana recognizes negative easements. Northwestern Improvement Co. v. Lowry (1937), 104 Mont. 289, 66 P.2d 792. A properly created negative easement can be utilized to restrain the right to do business on a piece of property and such easements are not automatically void under § 28-2-703, MCA. Reichert v. Weeden (Mont. 1980), 618 P.2d 1216, 1220, 37 St.Rep. 1788, 1792. We therefore reverse the District Court on its holding that the commercial use restriction is void.

Respondents also cite § 30-14-205, MCA, as applicable. We disagree. That statute deals with antitrust and monopolies. Bridger Bowl is not a monopoly merely because it is the only ski area in Bridger Canyon.

14

## IV

We have determined that there is a commercial use restriction on the parking lot. Appellants argue that the restriction acts to prohibit use of the parking lot by customers who buy beer and wine on other Bridger Bowl lands. We do not believe the restriction acts so broadly.

Appellants cite several cases from other jurisdictions wherein the courts have prohibited the use of property as a parking lot for a business on other property because such use violated a commercial use restriction in the deed to the parking lot property. See, e.g., Bennet v. Consolidated Realty Co. (Ky. 1928), 11 S.W.2d 910; Embry-Bosse Funeral Home, Inc. v. Webster (Ky. 1953), 261 S.W.2d 682; Borsvold v. United Daries (Mich. 1957), 81 N.W.2d 378; and H.E. Butt Grocery Co. v. Justice (Tex. Civ. App. 1972), 484 S.W.2d 628. These cases are distinguishable because they involve parking lots that were being utilized primarily by commercial business patrons. In this case, the primary purpose of the parking lot is to provide parking for skiers using the ski hill, and the land was conveyed to respondents for that purpose. We will not construe the fact that skiers using the lot might incidentally buy beer or wine at the ski area chalets as violating the commercial use restriction on the parking lot.

## V

The final issue we considered concerns the District Court's award of statutorily entitled attorney fees to respondents. We find that there are no statutes by which respondents are entitled to attorney fees.

15

The general rule is that in the absence of a specific contract provision or statutory grant, the prevailing party is not entitled to an award of attorney fees either as costs of action or elements of damage. Martin v. Crown Life Ins. (Mont. 1983), 658 P.2d 1099, 1104, 40 St.Rep. 216, 221. The statutes cited by respondents as authority for attorney fees in this case include §§ 30-14-222, 27-1-316 and 28-3-704, MCA.

Section 30-14-222, MCA, is a provision for damages where there has been an unlawful restraint of trade. Since we have reversed the District Court on the unlawful restraint of trade issue, § 30-14-222, MCA, is no longer applicable to this case.

Section 27-1-316, MCA, provides the measure of damages for breach of covenants in grants of estates in real property. This statute makes no allowances for attorney fees where the covenantor brings an action for breach of contract against the convenantee as is the case here. Therefore, § 27-1-316, MCA, is also inapplicable to this case.

Section 28-3-704, MCA, provides for a contractual right to attorney fees. However, this statute is not applicable to the June 11, 1971 agreement that appellants sued on. Section 28-3-704, MCA, provides:

> Whenever by virtue of the provisions of any contract or obligation in the nature of a contract made and entered into at any time after July 1, 1971, one party to such contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right shall bring an action upon the contract or obligation, then in any action on such contract or obligation

16

all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees and the prevailing party in any such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his reasonable attorney fees from the losing party or parties. (Emphasis added.)

The agreement with the attorney fees provision was entered prior to July 1, 1971, and was found by the District Court to have been merged in the deeds which contain no such provisions. Therefore, this statute does not apply.

Thus, none of the statutes relied upon by respondents entitle them to attorney fees. The District Court is reversed on its award of attorney fees to respondent.

The District Court's denial of recission and injunction is affirmed. However, we reverse the declaration that the commercial use restriction is void and also the award of attorney fees. We direct entry of judgment in accordance with this decision.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

17