JUSTICE TRIEWEILER,
specially concurring:
I agree that the District Court was correct when it denied plaintiff’s motion for partial summary judgment. I also concur with the majority that the District Court’s order granting the defendants’ motion for summary judgment should be affirmed. However, I disagree with the reasons set forth by the majority for their decision.
This is clearly not a case where the undisputed facts bar plaintiff’s claim pursuant to the doctrine of merger.
It is correct that evidence of prior oral agreements is not admissible to alter a subsequent written agreement so long as the written agreement deals with the same subject matter. However, a written agreement will not preclude evidence of a prior oral agreement that deals with a different subject matter and which was not merged in the written agreement. That rule is clear from the concluding language in First National Bank of Missoula v. McGuiness (1985), 217 Mont. 409, 705 P.2d 579, where we stated:
“Under case law in Montana, it is clear that evidence of prior oral agreements is not admissible for the purpose of altering subsequent written agreements dealing with the same subject, and that the prior oral agreements and the written agreement will merge into the subsequent written agreement unless they are distinct and can stand *76 independently of one another. Reaves v. Reinbol[d] (1980), [189 Mont. 284, 289-290,] 615 P.2d 896, 899, 37 St.Rep. 1500, 1504.”
McGuiness, 705 P.2d at 584 (emphasis added).
In this case there was clear evidence from the testimony of the plaintiffs ranch manager, Mrs. Lou Grosskop, that the promise that plaintiff sought to enforce was different and independent from the promise which became the subject of plaintiffs written loan agreement with the defendant. Plaintiff sought to enforce a promise to loan her $150,000 for the purchase of cattle. The promise which became the subject of the written agreement relied upon by the majority was to loan the plaintiff approximately $30,000 for the purchase of pigs.
The deposition testimony of Mrs. Grosskop which was offered in opposition to the defendants’motion for summary judgment is replete with testimony describing the difference between the two promises. She gave the following answers to the following questions regarding the loan for the hog operation:
“Q. My first question I would like to ask is, in 1987, did the Montana Bank of Roundup ever make any unconditional promise or commitment that it would continue to provide money for the operating expenses of the Eiselein Ranch?
“A. Yes.
“Q. Who made that promise?
“A. Dick Swanz.
“Q. And when did Mr. Swanz make that?
“A. January.
“Q. January of 1987?
“A. Yes.
“Q. Tell me what Mr. Swanz said.
“A. We received a $30,000 line of loan at that time. I can’t repeat the exact words.
“Q. To the best of your recollection.
“A. We received $30,000 to start an operation to do with some of the things we’d talked about in the past. We had talked of putting in a hog operation, a sheep operation, and these were just talking about different types of projections we were going to work on. That’s basically it.”
Mrs. Grosskop gave the following testimony regarding a second promise to loan money for a cattle operation:
*77 “Q. At any other time in 1987 did anyone at the Montana Bank of Roundup make an unconditional promise or commitment to continue to provide money to the Ranch?
“A. Yes.
“Q. Okay. Who was that?
“A. Dick Swanz.
“Q. And when?
“A. In April.
“Q. April 1987?
“A. Yes.
“Q. Tell me what Mr. Swanz said during this conversation.
“A. We had been working with a budget projection of buying cattle, and I had called and asked if he had reviewed it and we were going to go ahead with this, and he said yes, he’d okay it.
“Q. How much was that budget for?
“A. That particular budget, we was looking at buying about 200 to 250 head of cattle at that time.
“Q. Okay. In terms of a dollar amount, what were you asking for?
“A. Around the $150,000 mark. We hadn’t set an exact figure, depending on the price of cattle.”
(Emphasis added.)
Mrs. Grosskop testified that in order to obtain the loan for the pig operation, she submitted a budget proposal pertaining to that operation. However, when applying for the cattle operation, she had to submit an entirely different budget proposal. The following testimony is illustrative of how independent the two loan transactions were:
“Q. Now in light of what you’ve told me, did the new budget that you prepared only relate to the cattle purchase, or did it also relate to these other aspects of your total program that you were talking about, the swine and the sheep, et cetera?
“A. The swine budget he already had because we already had the money for that. This proposal would have pertained basically to the 150 head run at that time.”
The fact that the loan promised in January was intended solely for the pig operation is further evidenced from the fact that the security agreement entered into as part of that loan seemed “64 pigs” and made no mention of any other collateral.
In Reaves v. Reinbold (1980), 189 Mont. 284, 615 P.2d 896, we reaffirmed that,
“This Comt has consistently held that the party moving for *78 summary judgment has the burden of showing the complete absence of any genuine issue as to all the facts which are deemed material in light of those substantive principles which entitle him to judgment as a matter of law.”
Reaves, 615 P.2d at 898 (citations omitted).
We further stated that:
“It is clear that the party opposing a motion for summary judgment will be afforded the benefit of all reasonable inferences which may be drawn from the offered proof. Mally v. Asanovich (1967), 149 Mont. 99, 423 P.2d 294; Harland v. Anderson, supra.”
Reaves, 615 P.2d at 898.
Based upon these principles, we held that a plaintiff in that case relying on a written agreement was not entitled to summary judgment where the defendant asserted contrary rights based on an alleged oral agreement. We stated:
“Plaintiff’s argument is based on the allegation that the written agreements entered into on November 21, 1975, which included the ‘Submitted Annualized Commission Agreement,’ superseded any prior oral negotiations or agreement between the parties. In support of this argument, plaintiff cites sections 28-2-904 and 28-3-203, MCA.
“As stated in plaintiff’s brief, there is abundant case law in Montana which holds that prior oral agreements or conditions are not admissible to alter or vary the terms of a later written contract. Davidson v. Casebolt (1969), 154 Mont. 125, 461 P.2d 2; Heckman and Shell v. Wilson (1971), 158 Mont. 47, 487 P.2d 1141; Kinjerski v. Lamey (1979), [185 Mont. 111], 604 P.2d 782. It should be noted, however, that such case law has only dealt with an application of the rule as to prior oral agreements and subsequent contracts between the same parties in regard to the same matter. It should also be noted that distinct collateral agreements even as between the same parties, will not merge so as to preclude a prior oral agreement. See Story v. Monforton (1941), 112 Mont. 24, 113 P.2d 507; 17 C.J.S. Contracts § 381 at 451.
“In reviewing the relationship of the two agreements in a light most favorable to defendant we note that the alleged oral agreement is collateral as opposed to ancillary. Both agreements were entered into at approximately the same time and deal with an arrangement whereby defendant is to receive monies for selling insurance. One agreement, however, is with Lincoln Benefit Life Company and provides for a repayment of advances made. The other separate *79 agreement is with plaintiff and allegedly provides that he personally will guarantee a set salary no matter how much defendant is required to repay the insurance company. Each agreement is distinct, separate, involves a different party and is able to stand independent of the other. With this being the case, we cannot find as a matter of law that the written agreement would supersede the alleged oral agreement.”
Reaves, 615 P.2d at 899.
The testimony of one witness which is disputed by another is sufficient to raise an issue of fact which precludes summary judgment on that issue. In this case, the testimony of Mrs. Grosskop was sufficient, if believed, to establish that defendants’January promise to loan money for pigs was separate and independent from its April promise to loan money for cattle. If that fact was established, then the written agreement which resulted from the January promise did not merge with the April promise and did not preclude the evidence which plaintiff sought to offer.
I believe, however, that defendants were entitled to summary judgment for different reasons. Assiuning that the testimony of Mrs. Grosskop is true and that the defendant did promise to loan her $150,000 to finance the purchase of cattle, that promise alone is not sufficient to form the basis for plaintiff’s cause of action. We have previously stated that “there is no legal duty requiring a bank to loan money to a customer absent a clear contractual commitment.” Mann Farms, Inc. v. Traders State Bank of Poplar (Mont. 1990), [245 Mont. 234,] 801 P.2d 73, 77, 47 St.Rep. 2094, 2099.
Under § 28-2-102, MCA, the essential elements of a contract are:
“(1) identifiable parties capable of contracting;
“(2) their consent;
“(3) a lawful object; and
“(4) sufficient cause or consideration.”
In this case, the specific elements of a contract were neither alleged nor proven by the plaintiff. Specifically, there was no consideration extended from the plaintiff to the defendant which would establish a binding contract.
Plaintiff in her complaint sought to enforce the defendants’ oral promise based on the principle of promissory estoppel. However, in Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 462, 614 P.2d 502, 506, we defined the elements of promissory estoppel as:
“(1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; *80 (3) reasonableness and foreseeability of the reliance; (4) the party asserting the reliance must be injured by the reliance.”
(Citations omitted.)
In this case, there was no evidence that subsequent to April 1987 the plaintiff suffered detriment by the reliance on the Bank’s promise to loan her money. Plaintiff located no cattle, purchased no cattle, and incurred no expense which could be attributed to the defendants’ promise to loan her money for a cattle operation. In fact, within two weeks from the time that the Bank promised to loan her money, plaintiff was notified through Mrs. Grosskop that the promise was being reconsidered and that further financial information was necessary. At that point, all further plans to proceed with expansion of the cattle operation were put on hold.
For these reasons, plaintiff suffered no detriment due to a justifiable reliance on defendants’ promise and has not satisfied the elements of promissory estoppel.
Because there was neither a binding contract nor sufficient detrimental reliance to establish promissory estoppel, I would affirm the District Court’s order granting summary judgment to the defendants.